McKee v. Reynolds.

Affirmed.

McKee v. Reynolds.

1. **Husband and wife: SALE AND CONVEYANCE OF DOWER RIGHT.** The contingent right of dower of the wife in the husband's lands, or his in hers, is not the subject of barter and sale between them. And aside from an agreement to separate, it is not competent for one to convey to the other his or her dower interest in real estate.

2. —— A promissory note of the wife, executed by her to her husband in consideration of the conveyance to her of his contingent right of dower in her lands, cannot be the basis of a judgment against her in an action at law. The foregoing principles are not changed by any of the provisions of our statute.

3. —— AGREEMENTS OF SEPARATION. Where an agreement of separation has been fairly entered into, and its terms afterward carried out in good faith by one of the parties, the law will, in many cases where justice demands it, hold the other party to it. But the law

will not sanction an agreement contemplating a *future* separation, nor enforce an agreement to separate if one of the parties is unwilling to do so. — Per DILLON, Ch. J.

4. —— CONVEYANCE OF DOWER. While the law does not recognize in the husband the legal right to make a valid grant to his wife of his inchoate right of dower, yet, if in pursuance of an agreement to separate he does so, and she pays him a consideration therefor, he would thereby be estopped from setting up a right of dower after her death. — Per DILLON, Ch. J.

5. —— But if, on the other hand, she has not paid the consideration, she cannot be compelled thereto by an action; nor would the husband in such case be estopped, his deed being inoperative to bind him as a grant, and there being no equity existing in favor of the wife, she having paid no consideration, to make the deed operate as an estoppel.

*Appeal from Jasper District Court.*

SATURDAY, APRIL 10.

MARRIED WOMEN: POWER TO CONTRACT: LIABILITY: RELEASE OF DOWER: AGREEMENT TO SEPARATE, ETC.— Action *at law* by the payee against the maker of the following promissory note: " $1,000.   On, etc., I promise to pay to Robert McKee or order $1,000, with 10 per cent interest from date, value received, Jan. 7, 1868.

(Signed)        SARAH F. REYNOLDS."

The petition is in the ordinary form, alleging the execution of the note by the defendant, its non-payment, and demanding *a personal judgment against her for the amount thereof with interest and costs.*   The consideration of the note is not stated in the petition, nor is there any prayer except for a general personal judgment against the defendant.

To this petition the defendant answered, among other things, " that the note was not the property of the plaintiff, but that of one Alexander Reynolds, and was given and executed under the following circumstances:

"At the time of such execution, and now, said Alexander Reynolds and defendant were husband and wife; that the sole and only consideration for the said note was the execution of a certain quitclaim deed, a copy of which is attached, by which said Alexander Reynolds quitclaimed" all right, title and interest, whether "by dower or otherwise, to any and all the estate, whether real or personal, now held, or hereafter to be acquired," by the defendant; and no other consideration whatever than the execution of said deed entered into and formed a part of the consideration of said note; that at the time the said note and deed were executed, the same were done by defendant and said Alexander Reynolds, with the design and view of a separation from each other, and a sundering, so far as said parties could, of the marital relations existing between them; and the same was carried into effect by said Alexander leaving defendant and going to the State of Missouri, where he has continued to reside ever since about the time said note and deed were executed; since which time said Alexander and defendant have ceased to cohabit and live with each other as husband and wife, although no divorce has ever been applied for by either of the said parties."

The following is a copy of the deed referred to in, and made part of, the answer:

"Know all men, by these presents, that I, Alexander Reynolds, of the county of Jasper, and State of Iowa, in consideration of the sum of one thousand dollars, in hand paid me by Sarah F. Reynolds, my wife, do hereby sell and quitclaim unto said Sarah F. Reynolds, of Jasper county, and State of Iowa, all my right, title and interest, whether by dower or otherwise, to any and all the estate, whether real or personal, now held, or hereafter to be acquired, by the said Sarah F. Reynolds, and I do hereby further covenant with the said Sarah F. Reynolds, her

McKee v. Reynolds.

heirs and assigns, for the quiet and peaceable possession of the above named property forever.

{ U. S. Rev. stamp, $100, can. } Witness my hand, this 7th day of January, A. D. 1868.

(Signed)      ALEXANDER REYNOLDS.

STATE OF IOWA, } ss. JASPER COUNTY. }

On this 7th day of January, A. D. 1868, before me, the undersigned, a notary public in and for said county, appeared the above named Alexander Reynolds, personally known to me to be the identical person whose name is affixed to the foregoing instrument as grantor, and acknowledged the same to be his voluntary act and deed for the purposes therein expressed.

[L. s.]    In testimony whereof, I have hereunto set my hand.

(Signed)       S. N. LINDLEY,
              *Notary Public.*

The plaintiff demurred to this portion of the answer, because,

" 1. It shows that the defendant is liable on the note.

" 2. The conveyance of the husband's dower interest is a sufficient consideration to support a promise.

" 3. The husband can by deed convey to the wife his dower interest in lands, and such conveyance is valid.

" 4. The answer does not allege an offer to return or surrender the deed."

The court sustained the demurrer, and the defendant electing to stand upon her answer excepted to the ruling of the court, holding it to be insufficient, and appeals.

The only error assigned is the ruling of the court sustaining the demurrer to the answer.

*Seevers & Cutts* for the appellant.

*Winslow & Wilson* for the appellee.

DILLON, Ch. J.— I. Aside from statute, the promissory note of a married woman is absolutely void *at law*, and no judgment can be rendered thereon against her. *Jones* v. *Crosthwaite*, 17 Iowa, 393, and authorities cited on p. 397.

<div style="margin-left:2em">1. HUSBAND AND WIFE: sale and conveyance of dower right.</div>

The case referred to examines the question how far the statute has removed the common law disability of a married woman to make contracts which shall be binding upon her at law and upon which a personal judgment may be rendered against her. Since then other cases have been decided respecting the statute powers and rights of married women. *Logan* v. *Hall*, 19 Iowa, 491 ; *Jones* v. *Jones*, id. 236 ; *McCormick* v. *Holbrook*, 22 id. 487; *Owen* v. *Owen*, id. 270; *Richmond* v. *Tibbles*, 26 id. 474, but none of them touch the exact questions arising on the present record.

It has been argued by the appellant, that in no case can the husband and his wife make a contract which can be enforced in an action at law, during the coverture, by the one against the other. If we were prepared to assent to this broad proposition, it would, without more, determine the case in favor of the defendant. But we prefer to leave this point open, or where existing decisions have left it, and to decide this case upon the special circumstances set out in the answer.

The undisputed doctrine of the common law is, that marriage annihilated the legal capacity of the wife to contract, she was not *sui juris*, was considered as *sub potestate viri* and incapable of entering into contracts with her husband which would be of legal validity or which could be enforced at law against her.

Of course, this incapacity exists except so far as it has been removed by statute; and it was held in *Jones* v. *Crosthwaite*, that the statute did not intend to emancipate married women from all the disabilities of coverture. I

would be willing to hold that there is nothing in our statute which has so far removed the incapacity of the wife to contract with her husband as to make her liable upon her promissory note given under the circumstances stated in the answer; placing my judgment of reversal upon the ground of the disability of the wife as well as upon that of the want of consideration for the note. But the court prefer to place its judgment upon the latter ground, both because the path is plainer and more free of difficulty, and because it is the line of defense more particularly specified in the demurrer.

We now proceed to examine the question whether the conveyance of the husband's dower interest to his wife is valid, and constitutes a sufficient consideration for the note of the wife given therefor. (See demurrer.) This makes it necessary to consider the nature of the dower interest, and the mode in which it can be released or transferred.

If no separation is contemplated, it is not competent for the husband and wife as a matter of right to make a contract which shall be enforceable at law, whereby the one shall, in consideration of a sum agreed to be paid, relinquish to the other all of his or of her right of dower in real estate then owned or thereafter to be acquired.

No court would so hold unless the law making power should thus enact in language so plain as not to be mistaken. In view of the nature and purpose of the dower right, of the favor with which courts have always regarded it, of the door to fraud or improvidence which would be opened, and of the disabilities of coverture and the ground of such disability viz. : public policy and the protection of the wife, no court would hold that this right, while it is inchoate and contingent, can be sold and bartered away by husband to wife, or wife to husband (for under the statute their rights are reciprocal, Rev. § 2513; acts

1862), unless the language of the legislature, which it was claimed conferred such a right, was so unmistakable as to be beyond the subtleties of construction.

Aside from statute, it is a well established rule that a wife cannot relinquish her contingent right of dower except by joining with her husband in a conveyance to *a third person;* or at least, after a sale and conveyance by him, executing to the purchaser from him a release or relinquishment. She could in no case release her contingent dower right to her husband. Nor, while it is contingent, can she disannex or disassociate it from the real estate to which it attaches, and bargain and sell or convey it as a separate and independent interest to a third person, or to her husband. These principles of law are so familiar as scarcely to need a citation of authorities to support them. See, however, *Simms* v. *Hervey*, 19 Iowa, 272 ; and authorities collated in 2 Scrib. on Dower, 290, pl. 43 ; id. 291, *et seq. ; Carson* v. *Murray*, 3 Paige, 483 ; *Rowe* v. *Hamilton*, 3 Greenl. 63 ; *Martin* v. *Martin*, 22 Ala. 86 ; *Townsend* v. *Townsend*, 2 Sandf. Sup. Ct. 711 ; *White* v. *Wagner*, 25 N. Y. 328 ; *Winans* v. *Pebbles*, 32 id. 423 ; *Bear* v. *Bear*, 33 Pa. St. 525 ; *Hengle* v. *Jones*, 32 id. 432.

This is not upon the ground suggested by the defendant's counsel, that the dower interest is one of which no value can be predicated, but rests partly upon policy, and partly upon the peculiar nature of the dower interest, and the purposes for which this provision is made.

Leaving out of view, for the present, how far the question may be affected by the element of an agreement between husband and wife to separate, I can find nothing in the legislation of the State, which would justify the court in holding that the legislature had so altered the nature of the dower right, or so enlarged the capacity and power of husband and wife respecting it, as to hold that

it could, during the coverture, become the subject of valid grants and conveyances, from one to the other.

The proposition that the law authorizes this to be done, will justify,the use of but little time in refuting it. It finds no support in sections 2255 and 2256, because these contemplate conveyances to third persons, in which "the wife has joined with her husband."

The section mainly relied on is 2215 (§ 1207 of the Code), which provides that " a married woman may convey her interest in real estate in the same manner as other persons."

Respecting this section, it was said in *Simms* v. *Hervey* (19 Iowa, 273, 287), that " it accomplishes two things: First, it removes the common law disability to convey; and, second, it points out the mode of conveyance, the same as if she were sole."

It would be a most unwarrantable construction to hold that this section not only removed the disability of coverture as respects the conveyance of her interest in real estate, but that it endowed her with capacity to make a contract with her husband to buy his dower right, give him a note for the price agreed on, upon which she might be sued if she did not pay it.

It is our opinion that, aside from the effect of an agreement to separate, there is nothing in the statute which invests the wife with the legal right to grant to her husband her inchoate right of dower; nor has the husband the legal right to grant to his wife his contingent dower interest; and a note given therefor by the wife is not binding upon her at law so as to be the basis of a personal judgment against her.

What we hold is, that the *law* does not recognize the right of husband and wife during coverture to make valid and binding contracts to convey or release the dower right of one to the other. By this we do not mean to deny that

if such contracts are fairly made and acted on, that equity will not in some instances and in order to prevent injustice treat them as valid or estop the husband or wife to controvert their validity.

It follows that the deed by which the husband undertook to convey his contingent and inchoate dower right to his wife was inoperative; that it would not have the effect to defeat his dower right or invest his wife with it, and hence the note of the wife executed therefor would be without sufficient consideration to support it.

Nor would she be liable upon her note given under such circumstances because of a failure to surrender or return the deed.

This brings us to consider how the rights of the parties are affected by reason of the agreement of the defendant and her husband to separate, in pursuance of which the deed and note were executed. It is alleged in the answer that the parties agreed to separate; that the husband executed the deed conveying or releasing all of his right in and to the real estate then owned by the wife or thereafter to be acquired; that in consideration thereof she executed the note in suit, and that the parties have since resided apart, though no divorce has ever been applied for or granted.

3. —— agreements of separation.

Are such agreements to separate valid, and what effect does the law give to them? And here the answer which we find in the books is not, in principle, what, if the law were yet to be settled, we should suppose it ought to be.

The marriage relation creates the homes of the land, and it alone can effectively secure the care, nurture and education of the children. It is, therefore, one of the chief foundations upon which rest the civilization, the prosperity, the stability, the good order and happiness of society. The State, therefore, encourages marriages, and, after the marriage relation is entered into, is interested in

maintaining it unbroken.  Parties cannot be divorced at will, but only for specific causes of a grave character deemed by the legislature sufficient.  This is the wise doctrine of the law on this subject; and the reasons upon which it is founded have nowhere been more felicitously expressed than by Lord STOWELL, in his much-admired judgment in *Evans* v. *Evans* (1 Hagg. 35; 4 Eng. Ecc. 310):  " The law has said that married persons shall not be *legally* separated upon the mere disinclination of one or both to cohabit together.  This disinclination must be founded upon reasons which the law approves.

" To vindicate the policy of the law is no necessary part of the office of a judge; but if it were, it would not be difficult to show that the law, in this respect, has acted with its usual wisdom and humanity — with that true wisdom and that real humanity that regards the general interests of mankind.  For though, in particular cases, the repugnance of the law to dissolve the obligations of matrimonial cohabitation may operate with great severity upon individuals, yet it must be carefully remembered that the general happiness of the married life is secured by its indissolubility.  Where people understand that they *must* live together, except for a very few reasons known to the law, they learn to soften by mutual accommodation, that yoke which they know they cannot shake off; they become good husbands and good wives, from the necessity of remaining husbands and wives; for necessity is a powerful master in teaching the duties which it imposes.  If it were once understood that upon mutual disgust, married persons might be legally separated, many couples who now pass through the world with mutual comfort, with attention to their common offspring, and to the moral order of civil society, might have been at this moment living in a state of mutual unkindness — in a state of estrangement from their common offspring — and in a

state of the most licentious and unreserved immorality. In this case, as in many others, the happiness of some individuals must be sacrificed to the greater and more general good." See, also, *Schindel* v. *Schindel*, 12 Md. 294.

Such are the wise and just principles of the law respecting the marriage institution and the marriage relation. Being so, one would suppose that all agreements and all parts of agreements looking to a separation between husband and wife would be treated as absolutely void and illegal as contravening the policy of the law.

But such is not the case. The law will not sanction an agreement contemplating a *future* separation, nor enforce an agreement to separate if one of the parties is unwilling to do so. But where a present separation is resolved upon and an agreement has been fairly entered into between husband and wife as to the property and terms of separation, and this has been afterward carried out in good faith by one of the parties, the law will, in many cases, and where justice demands it, hold the other party to it. This anomalous and somewhat exceptional doctrine had been so long established and so many times affirmed, as long ago as Lord ELDON's time, that he would not entertain the question made to its soundness.

Usually such agreements are entered into by means of trustees, but equity, which is not strenuous of forms, does not necessarily require this formality. *Bonslaugh* v. *Bonslaugh*, 17 Serg. & R. 361.

The doctrine of the law concerning the validity of agreements to separate is clearly and briefly stated in the case of *Hutton* v. *Duey* (3 Penn. St. 100, 1846).

In that case the husband and wife signed articles of separation without the intervention of trustees; the husband executed the contract on his part, and the parties lived separate and apart until he died, when the wife pre-

ferred a claim for one-third of his estate. The claim was denied, the court giving therefor the following reasons:

" Deeds for the separation of husband and wife are valid and effectual, both at law and in equity, provided their object be an *actual and immediate* and not a *contingent* or *future separation*. This distinction runs through all the cases, and, although the wisest judges have frequently asserted that deeds of separation are at variance with the policy of the law, it is now too firmly settled to be shaken. The agreement here (in the case before the court) contemplates an immediate separation, has nothing unreasonable in it, and, consequently, the wife, after the death of the husband, is not entitled to the aid of the court, in any attempt to violate it. A wife can acquire a separate property which a court of equity will protect. At law, no contract can be made between husband and wife without the intervention of trustees; for she is considered as being *sub potestate viri*, and incapable of contracting with him. But in equity, when the contract is reasonable and has been consummated, it will be upheld, without the intervention of trustees." Approved, in *Dillinger's appeal*, 35 Penn. St. 357, 1860; see also *Bonslaugh* v. *Bonslaugh*, 17 Serg. & R. 361; *Walsh* v. *Kelley*, 34 Penn. St. 84; *Patterson* v. *Robinson*, 25 id. 81; Story's Eq. §§ 1372, 1427, 1428.

So in the case at bar. Although the law does not recognize in the husband the legal right to make a valid 4. —— convey- and effectual grant to his wife of his inchoate ance of dower. and contingent dower right in her property, yet, if, in pursuance of an agreement to separate, he does so, and she pays him a consideration therefor, neither law nor equity would allow him, after her death, to set up a right to dower in her real estate.

But she cannot be compelled by action to pay the consideration. If she chooses to pay it, and it is accepted, the law will estop the husband to disregard the agree-

ment. But if she does not pay, the husband's right is not affected by the deed, because, as we have before seen, it is inoperative to bind him as a mere grant, and because there is no equity existing in favor of his wife, she having paid no consideration, to make it bar him by way of estoppel.

In perfect accord with these views is the *decision* in *Blake* v. *Blake* (7 Iowa, 46). There the parties had separated, the husband had obtained a decree of divorce, subsequently the wife obtained a decree for alimony; the husband, instead of appealing or litigating, agreed to secure the amount by mortgage, which he did in consideration of receiving a relinquishment of his wife's dower interest; the husband kept the agreement and paid the money thereunder faithfully; no fraud or unfairness was shown, and, after his death, she claimed her dower, and it was held, and most properly so, that, under these circumstances, the court would not assist her to violate the agreement she had made.

The general remarks of the chief justice who delivered the opinion, as to the rights and powers of the wife, are to be taken in connection with the facts of the cause under consideration, and limited by them.

The present action, it will be remembered, is one at law on the note, and seeking a personal judgment against the wife thereon. It is our opinion that upon the facts set up in her answer, she is not liable.

Contracts made between husband and wife, and rights acquired by virtue thereof, can best be settled, and except where the rule is changed by the statute, must be settled in a court of equity, which can adapt itself in the relief granted and in that denied, to the ever varying circumstances of the cases as they arise.

The court erred in sustaining the demurrer to the answer, and in rendering judgment against the defendant. Its judgment is reversed, and the cause remanded.

                                        Reversed.