**KUEHN v. KUEHN et al.   (No. 6296.)**

(Court of Civil Appeals of Texas. Austin.
April 20, 1921. Rehearing Denied
June 29, 1921.)

1. **Judgment ⬤⟿572(2)—Entry sustaining exception to petition not a final judgment.**

An entry on the trial docket that defendants' exception to plaintiff's petition was sustained was not a final judgment amounting to res judicata, though it recited that plaintiff excepted to the ruling and refused to amend and gave notice of appeal, as there is no such thing as an automatic judgment, and affirmative judicial action by the court is necessary.

2. **Judgment ⬤⟿217—Award of judicial consequences held to be attached to facts essential to "final judgment."**

To constitute a "final judgment," the record must affirmatively show, not only that the court expressed its opinion as to the merits of the case, but that it awarded the judicial consequences which it held that the law attached to the facts, and there is no final judgment until the court by affirmative action has applied the law to the facts and pronounced a judgment in favor of one and against the other party to the litigation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

3. **Lis pendens ⬤⟿25(4)—Purchaser, under attachment obtained pending suit to set aside transaction involving land, held charged with notice.**

Where a wife's suit against her divorced husband to set aside a settlement of their property rights and a conveyance of land to the husband pursuant thereto was pending when a creditor of the husband, which subsequently purchased the land at sheriff's sale, acquired an attachment lien thereon, it was charged with notice under the rule of lis pendens, and could not claim to be an innocent holder without notice.

4. **Husband and wife ⬤⟿129(2)—Purchaser at sheriff's sale for pre-existing debt, held not entitled to plead estoppel against third person.**

A creditor, purchasing land of the debtor at sheriff's sale and crediting its bid upon a pre-existing debt, was not entitled to plead estoppel against the debtor's divorced wife, in her suit to set aside the conveyance of her interest in the land to the debtor.

5. **Husband and wife ⬤⟿129(5) — Husband's representations concerning ownership of land held not to estop divorced wife.**

A debtor's representations to a creditor that he owned lands which the creditor subsequently purchased at sheriff's sale, and that the title stood in his name, could not estop his divorced wife from asserting that her conveyance of her interests in the land to him as part of a property settlement was obtained by fraud, where he was not the wife's agent, especially where the wife had conveyed to him all of her interest in the property, and had theretofore brought suit to have the conveyance and settlement set aside on the ground that they were unjust, unfair, and inequitable.

6. **Trusts ⬤⟿93 — Husband, acquiring more than share of community property under separation agreement, holds excess in trust.**

If, in an agreement of separation and settlement of property rights between a man and his wife, who thereafter obtained a divorce, the husband obtained more than his just share of the community property, he held the excess over and above his just share in trust for the benefit of the wife because of the fiduciary or trust relation presumed by law to exist between husband and wife, and equity will impress a trust thereon, especially where the wife's interest was at least three times as much as the husband agreed to pay therefor.

Appeal from District Court, San Saba County; N. T. Stubbs, Judge.

Suit by Emma Kuehn against R. W. Kuehn and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Burney Braly, of Fort Worth, and Wilson & Johnson, of San Saba, for appellant.

Ocie Speer and John W. Estes, both of Fort Worth, Walters & Baker, of San Saba, and Flack & Flack, of Menard, for appellees.

KEY, C. J. Appellant's brief contains the following substantially correct statement of the nature and result of this suit:

"This suit was filed by appellant, a feme sole, against the appellees, R. W. Kuehn and the North Texas Trust Company, on the 23d day of December, 1918, and, by amended petition, appellees H. T., H. F., Gus, and Ella Behrens, were made new parties defendant on the 4th day of October, 1919. The action was brought to cancel and set aside an agreement of separation and settlement of property rights by and between appellant and appellee R. W. Kuehn, formerly appellant's husband, executed by them on the 28th day of July, 1915, a deed in ratification thereof executed by appellant on the 30th day of November, 1915, and a deed from J. E. Odiorne, trustee named in the separation agreement, to appellee R. W. Kuehn, executed on the 12th day of May, 1916, on the grounds that the terms of the settlement were wholly unfair, inequitable, wanting of sufficient consideration, and that such agreement and deed in ratification thereof were obtained from appellant by fraud, duress, coercion, and undue influence practiced upon her by appellee R. W. Kuehn personally, and through one J. E. Odiorne as his agent; for the determination of appellant's one-half interest in the real and personal estate of herself and husband, at the date of their separation, and establishment and recovery, based thereon, of her equitable interest in the lands described in her petition from the appellee North Texas Trust Company, a corporation, which was in possession of the lands by virtue of sheriff's deeds, which it obtained at its own execution sales against appellee R. W. Kuehn; for a partition of the-

lands in controversy as against appellee North Texas Trust Company and the Behrenses; the latter appellees having an undisputed interest in one of the tracts involved. In the alternative the court was asked to determine the value of the equitable interest of appellant at the time of the separation in the community estate of herself and former husband, and fix a lien against the lands in controversy in her favor for such amount as should be found due her, and in further alternative for damages against R. W. Kuehn and North Texas Trust Company.

"By her first amended original petition plaintiff (appellant) alleged, in substance: That she was married to the defendant R. W. Kuehn in or about the year 1885, and was divorced from him, in a divorce action brought by her grounded on acts of extreme cruelty and inhuman treatment committed against her by defendant Kuehn, by a decree of the district court of San Saba county, Tex., entered on the 17th day of November, 1915; that during the time plaintiff and defendant R. W. Kuehn lived together as husband and wife they accumulated community property, real and personal, and had such property, at the time of their separation on the 28th day of July, 1915, of the net value of $67,780; that prior to, and at the time of the execution of the separation agreement between plaintiff and defendant, R. W. Kuehn, said R. W. Kuehn, acting by and through one J. E. Odiorne, as his agent, proposed to plaintiff that they settle their property rights outside of court, and that then plaintiff would be free to obtain a divorce in a suit not involving property rights, and that J. E. Odiorne, as agent for R. W. Kuehn, represented to appellant that R. W. Kuehn was heavily involved financially, and that after his debts were paid he would only have about $20,000 left of community property, and that therefore plaintiff would be entitled to only $10,000 as her portion of the community estate; that plaintiff agreed to and executed the separation agreement, and subsequently the deed of ratification believing that the representations of R. W. Kuehn, through his agent, J. E. Odiorne, were true; that plaintiff did not have the advice of an attorney or any other friendly person capable of advising her in such transactions; that she had no independent knowledge of her husband's financial difficulties and obligations, he having always had the separate management of their community interests, and that she, being unlettered and unlearned, was wholly ignorant of business affairs; that she was worn out, sick, discouraged, and so mentally distressed over the conditions of her marital relations with defendant R. W. Kuehn at that time that she was induced to accept less than the value of her equitable portion of such property in settlement, and that she did so in order to have peace and rest for her mind and body; that she relied upon the truthfulness and representations of the said J. E. Odiorne, agent for R. W. Kuehn, as to the value of their community property and as to the financial difficulties and indebtedness of the said R. W. Kuehn, which representations were, in substance and effect, that the community property of plaintiff and defendant Kuehn was at that time worth, net, the sum of $20,000; that defendant Kuehn further promised at that time

that he would take care of, support, and educate Leona, the only child of their marriage, and that he would make an absolute deed of conveyance of their homestead property near the town of San Saba, consisting of 135 acres of valuable farming land, with improvements thereon, together with all household effects, to their said daughter, Leona, as soon as plaintiff executed the proposed separation agreement; that said Odiorne, as agent for defendant Kuehn, then and there threatened plaintiff that, unless she agreed to the proposed settlement, defendant Kuehn would ruin her character in any divorce proceeding she might bring, and prevent her from obtaining a divorce, as well as any part of the property; that such representations as to the net value of the community estate were false and untrue; and that defendant, Kuehn knew them to be untrue.

"Plaintiff further alleged that defendant Kuehn refused to pay the full sum of $10,000 as agreed upon in such settlement, but paid only the sum of $9,000 (the receipt of which she acknowledged, and the court was asked to take that amount into consideration in arriving at the equities of the parties to the suit); that defendant Kuehn wholly failed and refused to convey the homestead to their daughter, Leona, and that his promise to so convey was substantial part of the consideration that moved appellant to make such settlement; that at the time of the filing of the suit it had become impossible for the said R. W. Kuehn to execute his promise to so convey said homestead, he having lost all of his title and interest in the real estate formerly constituting a part of their community estate, through a course of squandering and waste and bad business dealing, which resulted in a large personal judgment being obtained against him by defendant North Texas Trust Company, on which judgment executions were issued and levied upon all of the lands in controversy in this suit; that to the extent of the $1,000 cash which was never paid to plaintiff and the value of said homestead, alleged to be $7,500, the insufficient consideration for such settlement had failed; that defendant R. W. Kuehn had become, at the time of the filing of the suit, totally insolvent, and that by reason of which a personal judgment against him for such amount as plaintiff might show herself entitled to would be worthless, and she could not thereby be compensated for her losses; and that by reason of all the facts alleged she was entitled to have all of her equities and right of recovery enforced against the lands and premises which plaintiff and defendant Kuehn owned at the time of their separation, standing in the name of the North Texas Trust Company at the time of filing of the suit.

"As to the claim of the North Texas Trust Company, defendant, plaintiff alleged that it, having obtained a judgment against defendants R. W. Kuehn and J. E. Odiorne in the district court of Tarrant county, and having fixed attachment liens and foreclosed the same on the lands in controversy in this suit, bought in said lands at its own foreclosure sales as under execution, obtaining deed thereto from the sheriffs of Williamson and San Saba counties, Tex.; that defendant North Texas Trust Company did not pay a valuable consideration for said lands

at the sundry sheriff's sales, but merely credited the amount of its bids on the judgment which it held against R. W. Kuehn and J. E. Odiorne; that the judgment obtained against R. W. Kuehn and J. E. Odiorne, and the sale of the lands thereunder, was without the knowledge or consent of plaintiff, and that at such time the North Texas Trust Company had knowledge and notice of plaintiff's claim and equity in the lands, and of the fraud and undue influence that had been practiced upon her, by which she was induced to part with her record title thereto; that the North Texas Trust Company knew, or could have known, all of the facts concerning the conveyance of said property by plaintiff to defendant Kuehn, if it had exercised proper prudence, care, and diligence in ascertaining such facts; that by reason of the unlawful and wrongful levy and sale of said lands without any consideration moving from the North Texas Trust Company the title acquired by it was subordinate to the equitable title and interest of plaintiff in and to said lands.

"To plaintiff's amended original petition defendant North Texas Trust Company answered by its third amended original answer, and thereby demurred generally and specially to plaintiff's amended petition, entered a general denial, and specially answered by a plea of res judicata, alleging that plaintiff had theretofore filed in the district court of San Saba county, Tex., a suit to recover the property in this suit sued for, and that a final judgment had been entered therein adverse to plaintiff, which judgment had been entered upon the hearing of a motion to enter judgment nunc pro tunc on the 11th day of November, 1919.

"Said defendant further specially answered by alleging that after plaintiff had obtained a divorce from her husband, and while she was a feme sole, had conveyed for a valuable consideration, on the 30th day of November, 1915, all of the real estate in controversy in this suit to her former husband, R. W. Kuehn, and she had permitted the title to said property to stand in the name of R. W. Kuehn, and had permitted him to use, keep, and control said property, and to incumber it and to borrow from defendant North Texas Trust Company the sum of $64,000 while said property was standing in his name, and had permitted him to obtain credit upon the apparent title to said property, and that she was therefore estopped from setting up any claim to said property; that the said R. W. Kuehn had represented to the North Texas Trust Company that he owned the real estate in controversy, along with other property, and thereby induced it to loan money to defendant R. W. Kuehn in said sum upon the strength of the representations so made, and that it would not have loaned said sum, or any part thereof, but for such representations, and that by reason thereof plaintiff was estopped to assert any claim in or to said lands.

"The North Texas Trust Company further denied that at the time it purchased said property it had knowledge, either actual or constructive, that plaintiff was claiming any interest in or to the same, and alleged that prior to the time plaintiff obtained her divorce she had executed a deed to J. E. Odiorne, trustee, to all the property in controversy, and had re-

ceived a valuable consideration for executing said deed, and that it, believing said transfer to be lawful, and without knowledge of the facts leading up to the divorce and settlement of the property rights between plaintiff and defendant Kuehn, was led to believe that R. W. Kuehn was solvent, and all of said property belonged to him in his own right, and therefore it loaned to said R. W. Kuehn the money on notes, which in turn were sued upon in the Seventeenth district court of Tarrant county, Tex., and upon which judgment was obtained against R. W. Kuehn and J. E. Odiorne; that plaintiff, having executed said conveyance, caused it to make the loan of said money and accept notes therefor; that it knew of and relied on the deed of conveyance to said R. W. Kuehn conveying the property in controversy, and believed representations then and there made to it by R. W. Kuehn that he did own said property in his own name and right, and, so knowing and believing, loaned said sum of money, which it would not have done but for the acts and conduct of plaintiff, and for which reason she was estopped from setting up any claim to said property as against it.

"The North Texas Trust Company further answered that it was a bona fide purchaser for value without notice of plaintiff's pretended claims of right or interest in said lands, and without notice of any fact or facts that would or could in law charge it with notice of such claims.

"Defendant North Texas Trust Company further answered that if plaintiff had had at any time a cause of action existing in her favor, it was lost to her, in that she had failed to assert it within a reasonable time after learning thereof, and that by reason thereof she had in fact and law ratified the same.

"The same defendant specially denied that any undue influence had been brought to bear upon plaintiff leading up to the settlement, and alleged that she had acted therein upon advice of counsel, that she had not been misled in any particular, and that after the divorce had been granted she had, of her own free will, executed the deed of November 30, 1915; that she had not asserted any right to the property until long after it had obtained possession thereof; and that she was therefore estopped as to it.

"It further answered that plaintiff was not entitled to the relief sought until she tendered into court the $9,000 which she admitted to have received. And, after alleging that it had paid off certain incumbrances against the lands in controversy to persons not parties to this suit, prayed that it be protected in such payments by way of subrogation to the rights of the holders, and further prayed that the title to the lands be quieted in it.

"The defendant Kuehn, by his answer, adopted in full the answer of the North Texas Trust Company, excepting its pleas of 'innocent purchaser' and 'estoppel.'

"Defendants Behrenses filed their joint answers, disclaiming any interest in the undivided one-third interest in the tract in controversy (of which tract they owned the remaining two-thirds), except a lease contract alleged then to be still in force and effect, and alleged that the parties to this suit could not demand a partition until the expiration of said lease. They further answered that, the contested por-

tion of the lands involved not being claimed by them, they had no interest in this suit until the title to that part was established, and that no partition could be had until then. They further alleged that a suit for partition with themselves had been theretofore filed in the same court as No. 2231 by the North Texas Trust Company and prayed that the two· suits be consolidated.

"To the answers of the defendants Kuehn and North Texas Trust Company, plaintiff replied by her first supplemental petition to her first amended original petition, containing general and special exceptions and general denial, and by way of special replication to paragraph 4 of the answer of defendant North Texas Trust Company set out the remaining portion of the judgment of the court rendered in cause No. 2060, which was not included in said answer, whereby a nonsuit was granted plaintiff, and said cause was dismissed without prejudice to her rights, and plaintiff alleged that said judgment of nonsuit without prejudice was the sole and only order or judgment having the effect of finality in said cause, and that there was nothing in any of the proceedings or orders entered in said cause having the effect of or being res judicata to this action.

"Plaintiff further replied by denying all allegations of defendants North Texas Trust Company to the effect that she had permitted R. W. Kuehn to make representations to. said company of the good and perfect title to the lands in controversy, and denied that she knew that such representations were made, and stated further that if they were made, in fact, it was without her knowledge or authorization. She specially denied that she had been guilty of any undue delay or of laches in the prosecution of this suit, or in, the assertion of her rights and equities in the lands involved herein.

"Trial was had before .the court without the aid of a jury on the issue of res judicata. All other issues were presented to the jury in due order of pleading and evidence, and upon the conclusion of the introduction of evidence .the court granted the defendants North Texas Trust Company and R. W. Kuehn's request for an instructed verdict in favor of defendants, and gave to the jury such· requested instructions, as follows: 'Gentlemen of the jury, it being conclusively shown: (a) That plaintiff is estopped, as to the defendants North Texas Trust Company and R. W. Kuehn by a former judgment, involving the matters here in controversy; (b) that plaintiff is estopped as to the defendant North Texas Trust Company, by reason of her act and conduct in executing the instruments and deed of conveyance placing the title to the lands in controversy in defendant R. W. Kuehn, against which the said North Texas Trust Company fixed a lien upon the faith of such instruments and deed; (c) that there is no evidence of fraudulent statements inducing plaintiff to execute the instruments sought to be canceled; and (d) that there is no evidence that J. E. Odiorne, who procured the execution by plaintiff of the instruments sought to be canceled, was the agent and representative of R. W. Kuehn—you are directed to return the following verdict: "We, the jury, find for the defendant, North Texas Trust Company, and R. W. Kuehn." '

"Upon which instructions a verdict was ren-dered for defendants as directed, on January 16, 1920, and judgment entered thereon on the same day. No relief, other than partition contingent upon recovery against defendants North Texas Trust Company and Kuehn having been asked as against defendants Behrenses, judgment was also entered in their favor."

The plaintiff has appealed.

## Opinion.

Although some other and minor questions are sought to be presented in appellant's brief, her counsel, in a printed argument subsequently filed, have abandoned all the assignments except those which complain of the action of the trial court in peremptorily instructing a verdict for appellees. The case has been ably presented in this court by briefs and arguments on behalf of each side. Counsel for appellees do not contend that the charge complained of was properly given for any reason other than those incorporated in the charge and repeated in the trial judge's findings of fact, and therefore, and as no other reason for sustaining the charge has occurred to us, this opinion will be limited to a consideration of the four propositions upon which the court predicated the charge.

[1] I. The first and perhaps the most important question is that of res judicata, which arises upon the following undisputed facts: On the 19th of July, 1916, Mrs. Emma Kuehn, appellant in this case, filed in the district court of San Saba county a suit against R. W. Kuehn and J. E. Odiorne, in which the plaintiff asserted substantially the same cause of action that is asserted in this case. That suit was No. 2060 on the docket of that court, and will hereafter be so designated in this opinion. On November 14, 1916, the trial court, after hearing argument upon the defendants' exceptions to plaintiff's petition, made the following entry upon the trial docket:

"Defendants' special exception No. 1 sustained. Plaintiff excepts to ruling of the court and refuses to amend her petition,. but gives notice of appeal."

There was no judgment entered upon the minutes of the court at that time, but on November 11, 1919, in considering a motion made by the defendant R. W. Kuehn to enter in cause No. 2060 a judgment nunc pro tunc, the following order was made and recorded in the minutes of the court:

"No. 2060.    Emma Kuehn v. R. W. Kuehn.

"On this the 11th day of November, A.. D. 1919, coming on to be heard the motion of defendant R. W. Kuehn to have entered in the above entitled and numbered cause a judgment nunc pro tunc sustaining the defendant R. W. Kuehn's special exception No. 1 to plaintiff's original petition and dismissing said cause in which motion the North Texas Trust Company had, at a former day of this term, November 10, 1919, joined for the purpose of

said motion by request made and permission granted in open court, and adopted said motion as its own, when came the defendants R. W. Kuehn and the North Texas Trust Company and the plaintiff, Emma Kuehn, by their respective attorneys of record, but before announcing for trial or answering to said motion the plaintiff in open court asked permission of the court to take a nonsuit in said cause, which permission was then refused by the court, and to which action of the court the plaintiff then and there excepted, and also before any announcement of ready for trial upon said motion by any of the parties thereto the said North Texas Trust Company, by its attorney, requested and was granted leave of the court to withdraw their motion as joinder, whereupon the plaintiff filed her answer to said motion, consisting of general and special exception, general denial and countermotion, and the defendant R. W. Kuehn and the plaintiff, Emma Kuehn, announced ready for trial upon said motion and answer thereto.

"And the court, after hearing the reading of said motion and the exceptions of plaintiff and plaintiff's answer to said motion, is of the opinion that all of said exceptions should be, and they are, overruled by the court, to which plaintiff excepted; and after hearing said motion and evidence upon the same the court is of the opinion that said motion should be sustained, and it appearing to the court that on the 14th day of November, 1916, at a regular term of this court, the following judgment and entry was made by the court upon the trial docket of said court after hearing argument of counsel, to wit: 'Defendant's special exception No. 1 sustained. Plaintiff excepts to ruling of the court, and refuses to amend his petition, but gives notice of appeal'—it is therefore ordered by the court that the clerk of this court do enter upon the minutes of this court this order sustaining said exception, and the same be entered now as of November 14, 1916, and at the same time plaintiff renewed her motion to dismiss this cause No. 2060 from the docket of this court without prejudice to plaintiff's interest, and, the same being considered by the court, the court is of the opinion said nonsuit by the plaintiff should be granted. It is therefore ordered and decreed by the court that said cause No. 2060 be, and the same is, dismissed from the docket of this court without prejudice to plaintiff's rights, to which ruling of the court permitting plaintiff to take a nonsuit defendant R. W. Kuehn excepts."

Although the North Texas Trust Company was not a party to that suit, it claims under its codefendant, R. W. Kuehn; and therefore, as no appeal was taken from the action of the trial court in the disposition of cause No. 2060, if that constituted a final judgment, then the matters sought to be litigated in this case are res judicata and barred by that judgment. The crucial test is: Was that a final judgment?

It is not, and cannot successfully be, denied that it was proper for the trial court in the nunc pro tunc proceeding to require the clerk to place upon the minutes whatever order or judgment the court had made or rendered at a former term; but it is contended, on behalf of appellant, that the order which the court required to be entered upon the minutes does not show that a final judgment was rendered in the case. After careful consideration, we have reached the conclusion that the contention referred to is correct.

[2] It would be difficult to give in fewer words a better definition than Blackstone has given of a judgment, which he defines as the sentence of the law upon the matter contained in the record. In order to constitute a final judgment, the record must affirmatively show, not only that the court expressed its opinion as to the merits of the case, but that it awarded the judicial consequences which it held that the law attaches to the facts. It has been repeatedly held in this state that merely sustaining a demurrer to the plaintiff's petition, where the court makes no further order, does not constitute a final judgment.

In Warren v. Shuman, 5 Tex. 441, the entry of what was termed the decree, after the usual preliminary statements, proceeded as follows:

"The jury returned the following verdict, to wit: 'We, the jury, find for defendant. J. H. Polly, Foreman'—whereupon it is ordered, adjudged, and decreed by the court that the defendant do recover of the plaintiff and his securities, for the use and benefit of the officers of the court, all the costs in this behalf expended, and that execution issue therefor."

Chief Justice Hemphill, speaking for the court, said:

"An objection fatal to the exercise of the revisory jurisdiction has presented itself, in the fact that no final judgment was rendered in the court below. The judgment does not show a disposition of the subject-matter of the controversy. It furnishes no evidence of the result of the dispute. There is no sentence pronounced upon the matters contained in the record, for one party or the other. There is a verdict for defendants. Upon this [verdict] should have been entered a corresponding judgment that the plaintiff take nothing by his suit, or that the title of defendants to the lands be confirmed, or any equivalent order, which, on the facts as found, would afford the relief appropriate to the law of the case. * * * There is judgment for costs only. * * * The appeal must therefore be dismissed for want of jurisdiction."

Bradshaw v. Davis, 8 Tex. 344, was similar to Warren v. Shuman just referred to, and the Supreme Court said:

"The judgment, entered in the cause, was not final, and that consequently the appeal was prematurely taken. The judgment upon the verdict should have been that the original petition be dismissed, or that plaintiff take nothing by his suit, or that the defendants go hence and be discharged without day, etc., or expressions of equivalent import should have been used, showing that the subject-matter of the contro-

versy had been determined, and that in favor of the defendant. * * * The appeal is dismissed."

In Fitzgerald v. Fitzgerald, 21 Tex. 415, there was a verdict for the defendant, upon which there was a judgment for costs only, and the court held that it was not a final judgment, and dismissed the appeal.

In Scott v. Burton, 6 Tex. 322, 55 Am. Dec. 782, the Supreme Court said:

"The form of the judgment is immaterial; but in substance it must show intrinsically and distinctly, and not inferentially, that the matters in the record have been determined in favor of one of the litigants, or that the rights of the parties, in litigation, had been adjudicated."

In that case a jury had returned a verdict for the defendant, and the court rendered judgment in his favor for the costs, but made no adjudication as to the rights of the parties, and the Supreme Court held that there was no final judgment, and dismissed the appeal.

In Hancock v. Metz, 7 Tex. 177, the Supreme Court said:

"In this cause, on the issue made between the parties, the jury found for the defendant; and the judgment of the court upon the verdict was that she should have and recover her costs from the plaintiff. We have repeatedly decided that such a judgment did not determine the matter in controversy; that it was no such final judgment as would authorize an appeal. There should have been a decree or judgment that the plaintiff take nothing by his suit, and that the defendant go hence without day. As was said in Scott v. Burton, * * * the form of the judgment is· immaterial; but, in substance, it must show intrinsically and distinctly—and not inferentially—that the matter on the record had· been determined in favor of one of the litigants, or that the rights of one of the parties, in litigation, had been adjudicated."

And it was there held that, as no final judgment had been rendered by the trial court, the Supreme Court had no jurisdiction.

The foregoing cases are not precisely analogous to the case at bar, inasmuch as the trial courts had not sustained exceptions to the petitions, as was done in this case. But they have been cited and quoted from for the purpose of showing that there is no final judgment in any case until the court has, by affirmative action, applied the law to the facts and pronounced a judgment in favor of one and against the other party to the litigation.

In Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S. W. 39, there was no verdict, but the trial court, in ruling upon exceptions to the plaintiff's petition, sustained the exceptions, and made the following notation upon the trial docket:

"Exceptions of defendant to plaintiff's petition sustained. Plaintiff excepts."

In that case it was held by the Supreme Court that, where defendant's exceptions to plaintiff's petition are sustained, and no entry is made finally disposing of the case and dismissing the petition, the court has power, at a subsequent term, to enter final judgment in favor of the plaintiff, and, if such judgment is inconsistent with the order made on the exception, the order must give way to the judgment, instead of limiting its effect; and, in dealing with the question of the finality of the judgment, the court, speaking through Mr. Justice Williams, said:

"If the proposition that the judgment upon demurrer was a final adjudication of the cause were true, it would undoubtedly follow that, after the adjournment of the term at which it was rendered, the court would have had no such jurisdiction over the parties or the subject-matter of that suit as to empower it to render, upon the issues of that cause, any further judgment affecting them. It is equally true that a failure to enter the order or judgment of the court upon the minutes does not change the attitude of the case; for, when the controversy arose, it was unquestionably competent for the court to supply the omission, and to make such entry nunc pro tunc as would properly represent the action previously taken. We shall therefore treat the case as if the proper entry upon the minutes had been made in January, 1895. We cannot agree, however, to the proposition that the action then taken by the court was a final disposition of the case, or of any issue in it, as to any party to it. The entry made was nothing more than the recorded expression of the ruling of the court sustaining the exceptions. If the dismissal of the case should have logically followed from the ruling made, it was nevertheless essential to the finality of the action of the court that it should have declared such consequence by the judgment pronounced. It is not sufficient to constitute a final judgment that the court make a ruling which should logically lead to a final disposition of the case, but the consequence of the ruling to the parties must be also declared. One of the accepted definitions of a final judgment is that it is 'the awarding of the judicial consequences which the law attaches to facts.' Hanks v. Thompson, 5 Tex. 6; Bradshaw v. Davis, 8 Tex. 344; Warren v. Shuman, 5 Tex. 449. Should it be conceded, therefore, as contended by defendant in error, that a dismissal of the cause, or a final judgment in favor of Mrs. Winter, at least, properly followed from the ruling on exceptions, it cannot be admitted that the court by its judgment so declared and adjudicated. It is not enough to make a final judgment that we can see that the court ought to have rendered one. What the court did must have amounted to a final determination of the rights of the parties resulting from the ruling made. In the case of Andrews v. Richardson, 21 Tex. 295, an order was entered that, if the plaintiff should not amend his petition by the first day of the term next succeeding the order, the case should be dismissed. The plaintiff did not amend his petition by the given time, but did amend later; and after such amendment and

the taking of various other steps in the cause the defendant moved to dismiss because of noncompliance with the order, and the motion was sustained. The Supreme Court, in passing upon this action, said: 'The motion assumed that the failure to comply with the order operated a dismission of the cause, but this was manifestly a mistake. It required a final judgment, from which an appeal would lie, to effect such dismission. No such judgment was rendered. The case was not dismissed.' This authority recognizes the proposition (which, in fact, runs through all our decisions on the subject) that, in order to constitute a final judgment dismissing a cause, there must be an express adjudication in substance to that effect. But it cannot even be conceded that a dismissal of the plaintiff's action necessarily followed from the ruling announced by the court upon exceptions. The plaintiff, notwithstanding such ruling, had the right to amend its pleadings so long as the case remained in court. If the plaintiff declined to amend, or failed to ask leave to amend, the court, if it considered that the ruling on exceptions established that there was no cause of action sufficiently averred in the petition, might have dismissed the case; but the dismissal in such cases 'is the immediate consequence, rather of the failure to amend than of the judgment upon demurrer.' Hughes v. Lane, 25 Tex. 366. The entry made by the judge does not show either that the plaintiff did or did not ask leave to amend, but no action was taken to cut off the right of amendment at some future time. The case was thus left in suspense, depending upon such order as the court might thereafter make.

"From these considerations, as well as from the authorities cited, it follows that the order made by the court upon the exceptions was not a final disposition of the case, but was simply interlocutory. It is well settled that judgments of this character do not, as do final judgments, deprive the court of power over the parties and the subject-matter involved. On the contrary, until the final judgment is rendered, the court has complete power to render such judgment as it deems the parties, upon the merits, are entitled to have, since the parties and subject-matter are before the court, and subject to its jurisdiction. Freem. Judgm. 29, 32 (a), 121, 142, 251; Perkins v. Fourinquet, 6 How. 209, 12 L. Ed. 406; 1 Black, Judgm. 308; 2 Black, Judgm. 509, 695. We are not speaking now of the regularity of the proceedings, but merely of the power of the court. The fact that the suit and the parties to it were still in court made them subject to its authority and to the judgment finally rendered, and their remedy against error in the action taken was by appropriate appellate proceeding. It is evident that none of the parties to the case could have appealed from the order upon the exceptions. In addition to those cited, the following authorities hold that a judgment sustaining or overruling a demurrer, but not expressly disposing of the case, is not a final judgment from which an appeal may be prosecuted. Elwell v. Johnson, 74 N. Y. 80 Bank v. Lynch, 76 N. Y. 514; Kirchner v. Wood, 48 Mich. 199, 12 N. W. 44; Rose v Gibson, 71 Ala. 35; Gage v. Eich, 56 Ill. 297; 13 Am. & Eng. Enc. Law, pp. 24, 25, and cases cited."

Counsel for appellees have attempted to distinguish this case from Texas Land & Loan Co. v. Winter, because the record shows that in the instant case the plaintiff refused to amend her petition and gave notice of appeal. It requires affirmative action by the court to constitute a final judgment, and nothing done by either party can be considered as a substitute for, or equivalent to, that judicial action of the court which is necessary to constitute a judgment. The conduct of appellant in refusing to amend her petition, in connection with the ruling of the court in sustaining the defendants' exception, may have afforded ample ground for the rendition of a judgment against her, either by dismissing the cause or by other appropriate action. But that which should have been done by the court cannot be considered as a substitute for that which was not done. Nor can the fact that the plaintiff declined to amend supply the failure of the court to pronounce judgment, disposing of the case by dismissal or in some other manner. In our procedure, there is no such thing as an automatic judgment; and, although the parties may file a written agreement to the effect that a judgment may be rendered for one party and against the other party, and may call the attention of the court to such an agreement, and ask that judgment be so rendered, such procedure does not constitute a judgment, and the case is still pending and undisposed of until the court takes some action showing that a final judgment has been rendered.

Counsel for appellees have cited a number of cases in support of their contention that the judgment now under consideration was a final judgment, but the only one that is really analogous to the instant case is Hall v. Waters, 118 Ark. 427, 176 S. W. 699, decided by the Supreme Court of Arkansas. In that case the trial court sustained a general demurrer to the complaint, and the complainant declined to amend, and refused to proceed further, and allowed judgment for costs to be entered against him. The Supreme Court of Arkansas held that the judgment was final. In support of that decision, the court cites Melton v. St. L., I. M. & S. Ry. Co., 99 Ark. 433, 139 S. W. 289, which is a somewhat similar case, and shows that, in reaching the conclusion that such proceeding constituted a final judgment, the court was influenced by consideration of certain provisions of the Code of that state. It is not clear that the cases referred to are now accepted as stating the law correctly in the state of Arkansas, because in State v. Greenville, 122 Ark. 157, 182 S. W. 556, the Supreme Court of that state said:

"An order sustaining a demurrer to a complaint is in effect a holding that the complaint is of no avail, and, it seems, is as near a final

order as could be conceived that is not so in fact; yet we have often, and in some very recent cases, held that: 'Where the trial court sustained a demurrer to a complaint without entering any further order or judgment, its action was not final, and the order cannot be appealed from."

The doctrine announced in the excerpt quoted is in harmony with the rule which prevails in this state, and seems to be in conflict with Hall v. Waters and Melton v. St. L., I. M. & S. Ry. Co., relied on by appellees. However that may be, and whatever may be the rule prevailing in the state of Arkansas, we consider the law as settled in this state in accordance with the view expressed in this opinion; and we therefore hold that the trial court erred in holding that the former judgment of the district court of San Saba county was a bar to the plaintiff's action to recover in this case.

[3, 4] II. We are also unable to agree with the trial court in its holding upon the question of estoppel. There are several reasons why the plaintiff was not estopped. In view of our holding upon the question of res judicata, there was not only no estoppel by reason of the former judgment, but suit No. 2060 was still pending until the plaintiff took a nonsuit, which was subsequent to the time the North Texas Trust Company fixed its attachment lien. In other words, when that lien was fixed the rule of lis pendens was notice to the trust company, and therefore it cannot claim to occupy the attitude of an innocent holder without notice; and there was an utter failure to show that Mrs. Kuehn was estopped by anything she did or said. Furthermore, the trust company holds under R. W. Kuehn, appellant's husband. It bought the property in at sheriff's sale, and credited its bid upon a pre-existing debt against R. W. Kuehn; and therefore it is not entitled to claim an estoppel. As a matter of fact, there was an entire failure to show that Mrs. Kuehn made any representations to the trust company, and therefore it could not have been misled by any fraudulent conduct upon her part. To our minds, it is quite clear that the testimony failed to show that Mrs. Kuehn was estopped. Burleson v. Burleson, 28 Tex. 416; Blum v. Merchant, 58 Tex. 403; Nichols v. Crosby, 87 Tex. 453, 29 S. W. 380.

[5] Conceding that R. W. Kuehn told the trust company that he owned the lands in controversy, and that the title stood in his name, as he was not his wife's agent and could not prejudice her rights by his representations, the trust company cannot base an estoppel upon such statement. And especially is this true with the record disclosing the fact that, in pursuance of a written contract of settlement, his wife had conveyed to him all of her interest in the property, and she had brought suit to have the conveyance and settlement referred to set aside,

upon the ground that they were unjust, unfair, and inequitable. If the trust company did not examine the record, it is chargeable in law with the knowledge it would have obtained by making such an examination. Murphy v. Clayton, 113 Cal. 159, 45 Pac. 267; Shelton v. Cooksey, 138 Mo. App. 389, 122 S. W. 331; Breeze v. Brooks, 97 Cal. 72, 31 Pac. 742, 22 L. R. A. 257; Cabe v. Lovan, 193 Mo. 235, 92 S. W. 93, 4 L. R. A. (N. S.) 439, 112 Am. St. Rep. 480.

Kuehn represented to the trust company that he was worth about $80,000, and the record disclosed the fact that he had made a settlement with his wife for a consideration of not over $10,000, and a suit was then pending, brought by Mrs. Kuehn, to set aside that settlement and recover her interest in the property.

The case of Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S. W. 963, 66 Am. St. Rep. 875, cited in behalf of appellees, is not in point.

[6] III. We also hold that the evidence raised the issue of fraud. It is contended on behalf of appellees that Mrs. Kuehn's right to the property in controversy is not governed by, nor subject to, the law of implied trust, but we cannot indorse that contention. If it be true, as alleged by her, that in the settlement referred to her husband obtained more than his just share of the property, then, on account of the fiduciary or trust relation which is presumed by law to exist between husband and wife, Mr. Kuehn held the excess over and above his just share of the property in trust for the benefit of his wife. The law upon that subject is fully and clearly stated in 39 Cyc. p. 169, as follows:

"Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts ex maleficio or ex delicto, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice. * * * One who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers by reason of the fraud or other wrong, and who is equitably entitled to the property. In all cases of this character equity will impress a constructive trust upon the property so acquired in favor of the person equitably entitled thereto, although he may never have had any legal estate therein. The

transactions which will be regarded in equity as containing such an element of fraud, active or constructive, as to give rise to constructive trusts, are numerous and varied."

See, also, Hendrix v. Nunn, 46 Tex. 147, 148, and Gillean v. Witherspoon, 121 S. W. 909–913, where the courts of Texas recognize this general doctrine and rule of equity. Constructive trusts arise between parties in family relations. 39 Cyc. 186; James v. Groff, 157 Mo. 402, 57 S. W. 1081; Hayne v. Hermann, 97 Cal. 259, 32 Pac. 171. In the last case cited the court said:

"Whenever a person acquired from another the title to real estate by fraud, actual or constructive, practiced upon that other, a constructive trust is created, which a court of equity will fasten upon the title in his hands. There are certain relations in which such confidence and trust exists between the parties that any dealings between them wherein one obtains an advantage from the other raises the presumption of fraud, and casts upon him the burden of executing the trust which the law imposes upon him. One of these relations is that of husband and wife. * * * Fraud also is presumed whenever one party gains an advantage to himself through any undue influence exercised by him over the party from whom the advantage is derived."

In fact, according to the common law, contracts between husband and wife and conveyances from the wife to the husband are void, but if they are shown to be fair and equitable, they may be enforced by court of chancery. When they are not shown to be of that class, they are treated as unlawful and void in equity as well as in law. Perry on Trusts, §§ 194, 195, 206; 2 Pom. Eq. Jur. § 955; Proetzel v. Schroeder, 83 Tex. 687, 19 S. W. 292; Zimines v. Smith, 39 Tex. 52. In the case last cited, our Supreme Court said:

"The common law gives no sanction to post nuptial contracts; equity will sometimes enforce them, but to meet its sanction and approbation they must stand upon the broad principles of equity, and they must appeal to the conscience of the court for sanction."

There was testimony tending to show that Mrs. Kuehn's interest in the community property which she attempted to convey to her husband was worth at least three times as much as he agreed to pay her therefor; and, if such was the fact, then the courts of this state, which administer both law and equity in the same proceeding, will condemn such transaction as a fraud upon the rights of Mrs. Kuehn.

Speaking for himself only, the writer is of the opinion that upon the question of fraud, and the validity of the contract and deeds attacked by Mrs. Kuehn, the burden of proof rested upon the defendants, and not upon her. It is so held in Perry and Pomeroy, heretofore cited, and Cyc. states the rule in the following language:

"When the question of fraud is raised in connection with the validity of the wife's conveyance to her husband, the burden is upon the husband to show that the same was fair and free and voluntary on her part." 21 Cyc. 1293, 1294.

And the same conclusion seems deducible from the language of our Supreme Court in Rains v. Wheeler, 76 Tex. 395, 13 S. W. 325, where it is said:

"All deeds for future separation are held to be absolutely void; but, where the spouses have already separated, or have determined upon a separation and are in the act of executing it, a conveyance by the husband, intended as a provision for the support of the wife, will be upheld. In other respects a deed of separation was held void. This was the carefully restricted doctrine at an early day in the English courts, and as so limited it has been universally recognized in the courts of this country. The tendency of the later English cases is to extend to deeds of separation a more liberal support (1 Bishop on Marriage and Divorce, § 634a), while by the weight of authority in the American courts they are held valid in so far as they settle the rights of property between the husband and wife, provided they have been entered into without coercion or other undue influence, and the provisions are just and equitable. Hitner's Appeal, 51 Pa. St. 110; Hutton v. Hutton, 3 Barr, 100; Dillenger's Appeal, 11 Casey, 357; McKennon v. Phillips, 6 Whart. 571; Loud v. Loud, 4 Bush, 453; McHubbin v. Patterson, 16 Md. 179; Randall v. Randall, 37 Mich. 563; Robertson v. Robertson, 25 Iowa, 350; McKee v. Reynolds, 26 Iowa, 578; Walker v. Walker, 9 Wall. 743. See, also, Fox v. Davis, 113 Mass. 255; Snitzer v. Snitzer, 26 Grat. 574."

IV. The plaintiff charged in her petition that in making the settlement referred to she was misled and overreached by certain fraudulent representations made by J. E. Odiorne, as the agent of her husband, R. W. Kuehn. The trial court held that there was no proof that Odiorne was the agent of R. W. Kuehn, and we think the court erred in that holding. However, we do not regard the question of agency as of controlling effect in the case. Our holding that in dealings between husband and wife, and those holding under the husband and not protected as innocent purchasers, the courts will protect the right of the wife to one-half of the community property, or its equivalent, renders the question of agency of no importance. In other words, if as a result of the transactions involved in this case, R. W. Kuehn obtained from his wife, for a grossly inadequate consideration, her moiety of the community property, the courts will disregard the contract of settlement and the deeds made by her in pursuance thereof, and enter whatever decree may be necessary to fully protect her rights. This being the case, it is immaterial what representations were made, nor by whom made, in order to induce Mrs. Kuehn to pursue the course she did.

Our conclusion is that the judgment of the trial court should be reversed, and the cause remanded; and it is so ordered. .

Reversed and remanded.

---

⬤➟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes