EMERY et al. v. BARFIELD et al. *
(No. 7588.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 8, 1916. On Motion for Rehearing, Feb. 5, 1916.)

1. HUSBAND AND WIFE ⨺264—COMMUNITY PROPERTY—EVIDENCE.
  Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4622, providing that all property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed common property where daughters to whom a wife conveyed her separate property reconveyed to the husband, the land prima facie became community property.
  [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 916; Dec. Dig. ⨺264.]

2. HUSBAND AND WIFE ⨺264—COMMUNITY PROPERTY—SUFFICIENCY OF EVIDENCE.
  In trespass to try title, evidence held to sustain the conclusion of the trial court that a husband paid out of community funds a valuable consideration for two tracts of land re-

conveyed to him by daughters to whom his wife had previously conveyed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 916; Dec. Dig. ☜264.]

3. HUSBAND AND WIFE ☜119, 266 — CONVEYANCE TO WIFE—EFFECT.

As between a husband and wife and their heirs, a conveyance of separate property of the husband or of community property to the wife vests the title in her separately.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429, 447, 925–928; Dec. Dig. ☜119, 266.]

4. HUSBAND AND WIFE ☜119—GRATUITOUS CONVEYANCE TO WIFE.

Where a husband conveys to his wife, title to the land is vested in her as her separate property, as between the parties and those claiming under them, as fully when the deed is without a valuable consideration as when with it.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429, 447; Dec. Dig. ☜119.]

5. HUSBAND AND WIFE ☜262—COMMUNITY PROPERTY—PRESUMPTION.

Where a deed is made to a wife without limiting it to her separate use, the presumption prevails that it was intended as a conveyance of a community estate, but the presumption is otherwise where the husband is the grantor, or the consideration was paid out of the wife's separate property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. ☜262.]

6. HUSBAND AND WIFE ☜119—CONVEYANCE TO WIFE OF INCUMBERED PROPERTY—WIFE'S SEPARATE ESTATE.

A husband's conveyance to his wife vests a separate estate in her to the extent of the equity conveyed, even if the conveyance is subject to an incumbrance which the wife assumes to pay, or subject to which she accepts the conveyance.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429, 447; Dec. Dig. ☜119.]

7. HUSBAND AND WIFE ☜266—CONVEYANCE TO WIFE OF INCUMBERED PROPERTY—PAYMENT OF INCUMBRANCE—EFFECT.

Where a wife accepts a conveyance from her husband subject to an incumbrance and thereafter pays it off out of her separate estate, full title will vest in such estate, but if the incumbrance is paid off with community funds, the community estate will be credited with the amount.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. ☜266.]

8. HUSBAND AND WIFE ☜119—WIFE'S SEPARATE PROPERTY.

If a wife, out of her separate estate, paid the consideration which induced the husband's judgment creditor to convey to her the husband's land on which such creditor had levied under writ of execution, the creditor's deed vested title in the wife for the benefit of her separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 424–429, 447; Dec. Dig. ☜119.]

9. HUSBAND AND WIFE ☜262—CONVEYANCE TO WIFE—WIFE'S SEPARATE TITLE—BURDEN OF PROOF.

The burden of proof was on the party asserting the separate nature of a wife's estate in her husband's land, conveyed to her by the latter's judgment creditor, who had levied thereon, to overcome the legal presumption of the community character of the property conveyed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. ☜262.]

10. HUSBAND AND WIFE ☜262—COMMUNITY PROPERTY.

Where a deed from the husband's judgment creditor, who had levied upon the land under execution, to the wife who paid off the incumbrance, did not, by apt words, limit the conveyance to her separate estate, the legal presumption of the community character of the land obtained.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. ☜262.]

11. HUSBAND AND WIFE ☜264 — WIFE'S SEPARATE TITLE — SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to sustain the trial court's finding that a wife did not pay her separate funds to the judgment creditor of the husband who had levied upon the latter's land for a conveyance thereof to herself.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 916; Dec. Dig. ☜264.]

12. APPEAL AND ERROR ☜994(3), 1012(1)—PROVINCE OF TRIAL COURT—CREDIBILITY OF WITNESSES.

The trial court is the judge of the credibility of witnesses and of the effect to be given to the testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3904–3905½, 3990–3992; Dec. Dig. ☜994(3), 1012(1).]

13. FRAUDULENT CONVEYANCES ☜104 — FRAUD AS TO CREDITORS—CREDITOR'S RIGHT TO QUESTION CONVEYANCE TO WIFE.

The creditor of a husband who conveyed land to his wife could question the deed to the wife.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 337–344; Dec. Dig. ☜104.]

On Motion for Rehearing.

14. HUSBAND AND WIFE ☜266—QUITCLAIM DEED—EFFECT.

Where a husband quitclaimed to his wife as to land which was part of the community estate, the deed conveyed into the separate estate of the wife only such title as the husband, or the community estate, had at the time of the conveyance.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. ☜266.]

15. HUSBAND AND WIFE ☜266—COMMUNITY PROPERTY—CONVEYANCE TO WIFE.

Where the judgment creditor of a husband levied upon community lands before the husband quitclaimed to his wife, and the consideration for a deed to the wife from the judgment creditor was paid out of community funds, such deed from the judgment creditor vested title in the community estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. ☜266.]

16. ESTOPPEL ☜39—QUITCLAIM DEED—AFTER-ACQUIRED TITLE.

Though before a husband's judgment creditor levied on community lands, the husband had executed a quitclaim deed to the lands to the wife, the judgment creditor's deed did not vest title in the separate estate of the wife, since an after-acquired title does not necessarily inure to the benefit of a prior conveyance by quit-

claim deed, nor is the grantor, or his heirs, estopped by a quitclaim deed to assert an after-acquired title.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 108, 109; Dec. Dig. ⊜=39.]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Suit by F. H. Barfield and others against S. E. Emery and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Ben L. Cox and Eugene De Bogory, both of Abilene, for appellants. J. M. Wagstaff, of Abilene, for appellees.

BUCK, J. This is the third time this case has been before us on submission. In the first appeal, 138 S. W. 419, the trial court having rendered judgment for plaintiffs, the defendants appealed, and the judgment was reversed for error in the charge, Justice Speer speaking for the court. On the second presentation the cause was remanded for failure of the trial court to file his findings of fact and conclusions of law in due time, Chief Justice Conner, while writing the opinion for the majority, dissenting, inasmuch, as stated in said dissenting opinion, as there appeared in the record a statement of facts duly approved by the court. See 156 S. W. 311. Later, appellees' motion to certify was overruled by the majority, Chief Justice Conner dissenting as before. Appellees, plaintiffs in the court below, having applied for a writ of error to the Supreme Court and defendants in error having answered, the Supreme Court reversed the judgment of this court (177 S. W. 952), holding that, inasmuch as it did not appear that the omission of the trial judge to duly file his conclusions prevented a proper presentation of the question involved in the appeal, or that it could have operated to the prejudice of appellants in that court, the judgment of this court was erroneous, and the cause was remanded to this court for further consideration.

On November 20, 1915, the appellants' motion for a resubmission was granted, and the cause was set down for hearing on December 11th. Suit was filed by appellees in the district court of Taylor county at the July term, 1909, in the form of trespass to try title, involving title to some 650 to 700 acres of land out of a tract of 13½ labors patented October 28, 1859, to Samuel Andrews, or Anders, who was the grandfather on his mother's side of defendant S. E. Emery and of some of the plaintiffs and the great-grandfather of the Barfields. The defendants S. E. Emery, Susan Sullivan, and W. L. Grogan, after a plea of not guilty, interposed pleas of three and five years' limitation. The defendant Grogan specially pleaded, as to the 100 acres conveyed to him by Emery, the plea of bona fide purchaser for value. The defendants S. E. Emery and Susan Sullivan further pleaded that, in addition to the common source of title from which both plaintiffs and defendants claimed originally, they held under and by virtue of a junior and superior outstanding title acquired by defendant Susan Sullivan, by a deed from R. H. Parker of date March 29, 1892; and as to the 200 acres included in the homestead designation, they pleaded the fee-simple title from their ancestor Samuel Andrews. Judgment was rendered by the court, a jury having been waived, for plaintiffs as against all defendants to an undivided one-half interest to all of the land described in the deed to R. H. Parker by the sheriff, except that part of the land theretofore conveyed to J. H. Williams; second, in favor of S. E. Emery against the plaintiffs of a tract 475 varas by 1353 varas; third, and in favor of defendants Emery and Grogan for one-half undivided interest in the balance of the land not otherwise disposed of by the judgment; fourth, and against Susan Sullivan, plaintiffs recovering their costs as against Emery—from which judgment defendants appeal.

S. E. Emery and Mrs. Mary Crutcher, formerly Mrs. Mary Murray, were children of Mrs. Susan Sullivan by a former marriage. There were five children born to Mr. and Mrs. Sullivan as follows: Mrs. John De Shazo, Mrs. Frankie Greenwood, Mrs. Annie Houser, James W. Sullivan, and Mrs. Sarah E. Barfield. At the time of the suit James W. Sullivan was dead, and also Mrs. Barfield. The three daughters first mentioned, joined by their husbands, as well as the heirs of the other two children deceased, were plaintiffs.

To get a clear conception of the facts involved we will here note the documentary evidence introduced. Plaintiff offered: (1) The patent from the state, October 28, 1859, to Samuel Andrews of said 14½ labors of land located in Jones county on the west bank of the Elm fork of the Clear fork of the Brazos, containing some 2,106 acres; (2) deed dated December 17, 1868, from Samuel Andrews, or Anders, to his daughter Susan Sullivan to 1,151¾ acres, being the south one-half of the tract covered by the patent; (3) deed of December 14, 1880, from J. M. and Susan Sullivan to their daughter Sarah E. Barfield, conveying 500 acres fronting on Elm fork, it being off of the southwest corner of the patented tract; (4) deed of August 12, 1886, of 555.75 acres by J. M. and Susan Sullivan to Mrs. Mary Murray; (5) deed of July 3, 1882, from J. W. and Sarah E. Barfield to J. M. Sullivan, reconveying the 500 acres theretofore conveyed by the Sullivans to Mrs. Barfield; (6) deed of October 24, 1882, from Mrs. Murray to James M. Sullivan, reconveying 651¾ acres described in the deed to her from the Sullivans; (7) deed from the Sullivans to J. H. Williams, July 6, 1892, 550 acres off the west side of the tract originally conveyed by Samuel Andrews to his daughter Susan Sullivan.

Defendant offered: (1) The patent from the

state to Samuel Andrews. (2) A quitclaim deed of J. M. Sullivan to Susan Sullivan of date December 10, 1891, and filed for record February 23, 1892, deed records of Jones county; consideration recited $10.00 paid and the further consideration that said Susan Sullivan is to assume and pay off a certain indebtedness of $2,500, together with all interest due the Jarvis-Conklin Mortgage Trust Company." This deed covers 1,150 acres, being apparently the tract conveyed by Samuel Andrews to Mrs. Sullivan. (3) A general warranty deed from Susan Sullivan to S. E. Emery of date August 10, 1907, conveying "all that certain tract or parcel of land described and known as the west one-half of the Samuel Andrews survey No. 191, except 550 acres out of the south part of same, which is now held and claimed by Mr. Wright, the land herein conveyed consists of 700 acres, more or less, and is all the land now owned by me under my control of the said Samuel Andrews survey." The consideration recited is, "$1.00 and the further consideration set out herein to me in hand paid by S. E. Emery, and with the further consideration that he, S. E. Emery, will care for and provide for me during the remainder of my life, and in consideration of the fact that he, the said S. E. Emery, has devoted himself for the last several years to my happiness and well-being when there was no one to care for me, and in consideration of the love and affection I have for my son, the said S. E. Emery." (4) Deed of November 16, 1908, from S. E. Emery to W. L. Grogan, conveying 100 acres in the northeast corner of west one-half of the Samuel Andrews survey.

Plaintiff further introduced the original papers in the justice court of Taylor county, styled R. H. Parker v. J. M. Sullivan, wherein plaintiff secured a judgment for the sum of $22.50 and costs, and the levy under alias execution issued December 9, 1891, by the sheriff of Jones county on "951 acres of the Samuel Andrews survey No. 191, being all of the west one-half of said survey except 200 acres, homestead of J. M. and Susan Sullivan"; (2) designation of homestead, by J. M. Sullivan, of date June 30, 1887, of the 200 acres exempted from the levy in the Parker v. Sullivan suit; (3) certified copy of a sheriff's deed, conveying 951 acres to R. H. Parker "for $25.00," by which "all the right, title and interest which said J. M. Sullivan had on October 26, 1891, or at any time afterwards" to said tract was conveyed; (4) quitclaim deed from R. H. Parker to Mrs. Susan Sullivan of March 29, 1892, and filed for record March 31, 1892.

[1, 2] The case hinges upon the issue as to whether, at the date of the death of J. M. Sullivan, the land in controversy was community property, or the separate property of Susan Sullivan, the surviving wife, under whom appellants claim. As will be noted, 1,151¾ acres conveyed by Samuel Andrews to Mrs. Sullivan was originally her separate property. Later, as evidenced by deeds to Mrs. Murray, a daughter by her first marriage, and to Mrs. Barfield, a daughter by her second marriage, Mrs. Sullivan, joined by her husband, disposed of her entire holdings under the deed from her father. Thereafter, by reason of the reconveyance by these two daughters of the two several tracts mentioned, the title to the same was vested in J. M. Sullivan, the husband of Mrs. Sullivan, and therefore became prima facie community property. Article 4622, Vernon's Sayles' Texas Civil Statutes. There is ample evidence to sustain the conclusion, evidently reached by the trial court, that J. M. Sullivan paid out of the community funds a valuable consideration for these two tracts conveyed. J. W. Barfield, son-in-law of Mr. and Mrs. Sullivan and surviving husband of Sarah E. Barfield, deceased, testified, in part as follows:

"I remember my wife received some property from Mr. and Mrs. J. M. Sullivan. There was 500 acres of land. That is the deed from Sullivan and wife to Mrs. Barfield which has been introduced in evidence here. I don't remember about how long she held the property; only a few years. * * * I then sold it to J. M. Sullivan. J. M. Sullivan paid me $750 cash for it, $1.50 per acre. I know a Mrs. Murray. She was a daughter of Mrs. Sullivan. I know whether any property was ever conveyed to her. I don't know whether Mrs. Murray ever conveyed that back to J. M. Sullivan only in a way; only what he told me. When he wanted to buy this 500 acres he told me that he had seen Mrs. Murray, and she offered to let him have the land, and he would buy mine if I would sell it. She had offered to let him have hers, and I told him then to go ahead and buy hers, and I would let him have—after I had talked to my wife and she said all right—and I told him to go ahead. He said that he had offered Mrs. Murray just what he had me, $1.50 per acre. * * * I sold the land for $1.50 per acre, and it was worth that. It was not worth $4 or $5 per acre. * * * He paid me cash. I sold it to him in Karnes county, and he sent me a check to San Angelo. * * * It is not a fact that J. M. Sullivan was involved and wanted to borrow money on that property, and that under advice of attorneys, in order to pass the title of his wife's property into my wife, he conveyed it first to my wife and this other daughter, and then had them to convey it to him so as to pass the title of his wife into him, so that he could borrow the money. I know that is not a fact. At the time old man Sullivan bought this 500 acres from me he had $12,000 in the bank at San Antonio, and he had 1800 head of cattle on the range. * * * Old man Sullivan was worth $40,000 when he made this trade with me."

[3-7] We then come to the question as to whether, by virtue of the quitclaim deed from J. M. Sullivan to his wife, Susan Sullivan, of December 10, 1891, and the quitclaim deed from R. H. Parker to Mrs. Sullivan of date March 29, 1892, one or both, the land conveyed became the separate property of Mrs. Sullivan. If not, the land in controversy would be the community property of Mrs. Sullivan and her deceased husband, and plaintiffs would be entitled to recover a one-half undivided interest in same. But, on the other hand, if the character of

the property was changed from community to separate by reason of either of these conveyances, Mrs. Sullivan would have been fully authorized to convey full title in the same to her son, S. E. Emery, in which event the defendants would have been entitled to judgment. As between husband and wife and their heirs, a conveyance of separate property of the husband or of community property to the wife vests the title in the wife's separate estate. Lewis v. Simon, 72 Tex. 470, 10 S. W. 554; Storey v. Marshall, 24 Tex. 306, 76 Am. Dec. 106; Tison v. Gass, 102 S. W. 751; Baker v. Baker, 55 Tex. 577. And in Peters v. Clements, 46 Tex. 114, it is held that where under a sale enforcing the vendor's lien in favor of the husband, the land was bid off by the agent of the husband, and the sheriff's deed made to the wife by the direction of the husband, the amount of the bid being credited on the judgment, title will be considered as being vested in the wife as her separate property. And this is true, as between the parties and those claiming under them, as fully when the deed is without a valuable consideration as when with it. See Speer on Law of Married Women, p. 79, § 81. While it is true that ordinarily property acquired by either husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife, and where a deed is made to the wife without limiting it to her separate use, the presumption prevails that it was intended as a conveyance of community estate, yet the presumption is otherwise where the husband is the grantor, or where the consideration therefor was paid out of the separate estate of the wife. As stated in the opinion of this court on the first appeal:

"As between husband and wife, and necessarily their heirs, a conveyance by the husband to the wife has the effect of vesting a separate estate in the wife; and this, too, whether the instrument so limits the estate or not. The deed could have no other effect. Jones v. Humphrey, 39 Tex. Civ. App. 644, 88 S. W. 403, and authorities there cited."

And this would be true to the extent of the equity conveyed even if such conveyance was subject to an incumbrance, which the wife assumed to pay, or subject to which she accepted the conveyance. If thereafter she paid off the indebtedness out of her separate estate, full title would vest in her separate estate; but if the incumbrance should be paid off out of community funds, then the community estate would be credited with such amount as was contributed out of said community estate. See Emery et al. v. Barfield et al., 138 S. W. 419. It, therefore, follows that if at the time of the execution and delivery of the deed from J. M. Sullivan to his wife said Sullivan had any interest or title in and to the property sought to be conveyed, such instrument would vest such title in the separate estate of his wife.

[8] We next come to the question of the effect, if any, of the deed from Parker to Mrs. Sullivan. It will be remembered that the levy under the writ of execution issued in the case of Parker v. Sullivan was made on the same date as that of the deed from Sullivan to his wife. Which was made at the earlier hour the record does not disclose. If the consideration for the subsequent deed from Parker to Mrs. Sullivan was paid out of the separate estate of Mrs. Sullivan, undoubtedly such deed would vest title in Mrs. Sullivan for the benefit of her separate estate. Upon this question testimony was introduced by defendants of Mrs. Sullivan, given upon the trial of this cause on March 21, 1910, in part as follows:

"I remember about the land being sold and about me giving Mr. Sullivan some money about that time for a purpose. * * * You know the land was to be sold, and he came to me and he says to me, he says, 'Susan, we will lose the land.' He says, 'I haven't got the money.' 'Well,' I says, 'I have got it.' I gave him the money to redeem the land. I gave him $85 or $87, somewhere. The money that I gave him at that time I got from my father Samuel Andrews. * * * I have got some of that original money now that I got from my father's estate. It is gold. I have got a right smart of it now. * * * That $85 was a part of the original money that I got from my father's estate."

But as contradictory evidence upon this issue, the plaintiffs introduced certain portions of the testimony of Mrs. Sullivan, given on a prior trial, to wit:

"I know R. H. Parker, a man who used to live here in Taylor county. I was not much acquainted with him. I had seen him. I don't have any recollection of a deed from R. H. Parker to me. I remember that before Mr. Sullivan's death the land was to be sold for taxes, and it was mortgaged, you know, wasn't it? I think it was mortgaged, and I sold a lot of it to Williams. That was this end of it. The money I let Mr. Sullivan have was to redeem the property from taxes. * * * I do not know anything about anybody going there and selling the land. I never saw anybody come in there and sell the land that I know of. * * * I have no recollection of it, I gave him the money, of course, to recover the land. I got that money from my father."

[9-13] There being a legal presumption of the community character of the property conveyed by the Parker deed, such legal presumption must be overcome by the party asserting the separate nature of the estate. As Judge Speer states, in his valuable work on the Law of Married Women in Texas, § 182, pp. 188, 189:

"The effect of this, like all legal presumptions, is subject to be overcome by proper evidence, and whatever tends to show that such property is not in fact community, but separate in character, is, as between the parties and their privies, admissible for such purpose. This presumption makes only a prima facie case in favor of the community, which must prevail in absence of contrary proof. In all cases where this presumption obtains, he who asserts the separate character of property has the burden of proving it, whether it be the wife or husband" (citing a number of Texas cases).

We think, therefore, that, inasmuch as said deed from Parker did not, by apt words,

limit the conveyance to the separate estate of Mrs. Sullivan, the legal presumption of its community character would obtain. The testimony of Mrs. Sullivan, as introduced by defendants, coupled with the execution of the prior deed from Sullivan to his wife, might be, in the absence of evidence of a contrary import, sufficient to overcome the legal presumption. But in the face of Mrs. Sullivan's other testimony, introduced by plaintiffs, we cannot say that the court was not authorized in giving credence to the latter and disbelieving the former. If he did so, which is apparent from the judgment, he would be, in so doing, acting within his province as the judge of the credibility of the witnesses and of the effect to be given to the testimony. Furthermore, Parker, as a creditor of J. M. Sullivan, was in a position to question the deed from the latter to Mrs. Sullivan. This may explain why Sullivan and wife did not rely upon the efficiency of the deed of gift from husband to wife to relieve the land from the binding effect of the levy and sale under execution, and why the judgment was satisfied by payment.

While we recognize that from the evidence in the record, a judgment for defendants would be sustainable, yet, we feel, on the other hand, that we cannot disturb the judgment which has been rendered in favor of the plaintiffs.

All assignments are overruled, and the judgment is affirmed.

## On Motion for Rehearing.

[14] Counsel for appellant seems to have failed to understand the purport of certain language used in our original opinion. The deed of December 10, 1891, from J. M. Sullivan to his wife, being only a quitclaim, conveyed out of the community estate into the separate estate of Mrs. Sullivan only such title as J. M. Sullivan, or the community estate, had at the time of the conveyance. Rogers v. Burchard, 34 Tex. 442, 7 Am. Rep. 283.

[15, 16] If as a matter of fact, as found by the trial court, and which finding is evidence to support, the consideration for the Parker deed was paid out of the community funds of the Sullivans, and the levy under the Parker judgment was made prior to the execution of the quitclaim deed from Sullivan to his wife, then the deed from Parker to Mrs. Sullivan would vest title in the community estate of the Sullivans. Nor would the fact that prior to this Parker deed Sullivan had executed a quitclaim deed to his wife cause the Parker deed to vest title in the separate estate of Mrs. Sullivan. An after-acquired title does not necessarily inure to the benefit of a prior conveyance under a quitclaim deed, nor is the grantor or his heirs under a quitclaim deed estopped from asserting such after-acquired title

against such prior conveyance. Perrin v. Perrin, 62 Tex. 477; Willis v. Smith, 72 Tex. 573, 10 S. W. 686; 1 Devlin on Deeds, § 27.

The motion for rehearing is overruled.