KUEHN et al. v. KUEHN.    (No. 6695.) *

(Court of Civil Appeals of Texas.    Jan. 9, 1924.)

**1. Appeal and error ⌖1002—Findings of jury on conflicting evidence not disturbed.**

Jury findings based on conflicting evidence will not be disturbed on appeal, unless same are so overwhelmingly against the preponderance of the evidence as to clearly show that such verdict is wrong.

**2. Husband and wife ⌖270(8), 271—Settlements between, upheld only where no coercion or undue influence; burden on husband to show absence of fraud.**

Settlements between husband and wife will be upheld only where they are entered into without coercion or undue influence, and the provisions are just and equitable, and, where the question of fraud is raised, the burden is on the husband to show these facts.

**3. Appeal and error ⌖1062(5)—Husband and wife ⌖270(9)—Issue submitted in action to set aside separation agreement held not misleading or prejudicial.**

In action by wife to set aside separation agreement, submission of issue as to whether plaintiff received half of the community in the settlement, though unnecessary in view of other issues submitted, held harmless, and not to suggest to the jury that, unless she received the value of one-half the community, she had been deceived.

**4. Husband and wife ⌖271—Wife entitled to half community property.**

A wife in a separation settlement is entitled to half the community property or its equivalent.

**5. Husband and wife ⌖271—Husband purchasing community interest of wife must see that purchase is fair and equitable.**

The law imposes no ·duty on either spouse on separation to purchase the community interest of the other, but, having undertaken to do so, whether in person or through an agent, it is incumbent upon the husband to see to it that such purchase from the wife is fair and equitable.

**6. Husband and wife ⌖270(9)—Issue as to extension of credit to husband by reason of separation agreement held properly framed in action to set aside agreement.**

In an action by a divorced wife to set aside separation agreement against her husband and a company which had purchased land under a sale to satisfy a judgment against the husband, a question to the jury as to whether the defendant N. (the company) was "induced to extend credit to defendant R. (the husband) which would not otherwise have been extended, by reason of the separation deed and agreement," and deeds subsequently executed to husband pursuant to the separation agreement, held not subject to criticism.

**7. Husband and wife ⌖262(2)—In wife's action to set aside separation agreement held burden on husband to show separate ownership.**

In action by wife to set aside separation agreement, where defendant husband, in addition to general denial pleaded specifically that lands purchased after the marriage were his separate property, the burden was on the husband to show that such property was not community property.

**8. Husband and wife ⌖262(2)—Trial ⌖205—Instruction placing burden upon husband to show that property not community property held proper.**

In action by wife to set aside separation agreement on ground of fraud, wherein husband claimed that certain land was his separate property, and the undisputed testimony showed that the land was purchased after his marriage to plaintiff, it was incumbent on him to show that it was his separate property, and it was proper for the court to so instruct.

**9. Trial ⌖205—General rule as to burden of proof and requirement that court charge thereon stated.**

It is a general rule that the burden of proof rests upon him who asserts the affirmative of an issue to establish it by a preponderance of the evidence, and the court should so charge, but this is not always true when a case is submitted on special issues, or when the testimony comes from both parties.

**10. Trial ⌖255(3)—Party desiring charge on burden of proof should request it.**

It is incumbent upon a party desiring a charge concerning burden of proof, to request it.

**11. Trial ⌖215—No necessity for instruction as to burden of proof where special issue indicates burden.**

Where special issues are so framed for a finding as to indicate the burden of proof, the court need not instruct thereon.

---

12. Appeal and error ⟜1033(5)—Party having burden of proof cannot complain of failure to charge thereon.

A party upon whom burden of proof rests cannot complain of court's failure to charge on burden of proof.

13. Execution ⟜273 — Rights of judgment creditor of husband as against wife suing to set aside separation agreement stated.

In action by a wife to set aside a separation agreement and to enforce her interest in land sold to satisfy a judgment of a third party against the husband; which judgment creditor purchased at the sale, court properly refused to submit the issue, "Did the defendant (the judgment creditor) levy its attachment, foreclose its lien, and purchase said land at foreclosure sale upon the strength of the apparent title thereto being vested in the defendant (husband) under the terms of the separation deed or plaintiff's warranty deed?" the lien of attachment not prevailing over the wife's rights which, being merely equitable, could not be placed on record under the registration laws.

14. Husband and wife ⟜270(10) — Money judgment held properly rendered against husband in action to set aside separation agreement.

In action by wife, to set aside a separation agreement, against husband and his judgment creditor, who had purchased his lands in satisfaction of judgment, held, that the court did not err in giving plaintiff a money judgment against her husband, and in fixing a lien against the lands to secure it, and ordering same sold to pay such judgment as against the objection that the only relief plaintiff was entitled to was to recover her interest in the lands as community property; the evidence showing that the husband was insolvent, that community personal property had been disposed of, and that it was impracticable to restore to plaintiff her interest in the property.

15. Trial ⟜89—Refusal to exclude evidence of drunkenness, abuse, etc., in action to set aside separation agreement held improper.

In action by divorced wife to set aside separation agreement, where wife pleaded overreaching and undue influence by the husband and another in taking advantage of her weakened and distressed state of mind from intemperance, cruelty, threats, etc., of the husband, testimony as to drunkenness of husband from and after the marriage and his cruel treatment of plaintiff, threats against her life, abuse, etc., should have been excluded on defendant's motion to strike after the plaintiff abandoned her allegations of overreaching and undue influence; only the issue of fraud being submitted to the jury.

16. Appeal and error ⟜1047(3)—Failure to exclude evidence held not prejudicial.

In action by divorced wife to set aside separation agreement and recover her share of community property, error of court in refusing to strike evidence as to defendant's cruelty and drunkenness was harmless, where the only vital issue in the case was whether or not the husband made fair and equitable settlement with his wife of their community property, and the

husband failed to discharge the burden resting on him of showing that the division of property was equitable.

17. Evidence ⟜249(1)—Statements of husband's partner held admissible in action to set aside separation agreement.

In action by divorced wife to set aside separation agreement, statements and representations made to plaintiff by her husband's partner and agent as to the value of the community property, in an effort to settle property rights out of court and leave only the issue of divorce to decide, were admissible in evidence.

18. Evidence ⟜215(1)—Financial statements held inadmissible to show value of property.

In an action by a divorced wife to set aside separation agreement, financial statements by husband and his partner, made for the purpose of obtaining cattle loans, were not admissible to show the value of property owned by the husband, and the court should have instructed at defendant's request that such statements constituted no evidence of value.

19. Appeal and error ⟜1068(5)—Failure to instruct not to consider evidence held harmless.

In action by divorced wife to set aside separation agreement, error of the court in refusing to instruct that financial statements introduced in evidence were not admissible to show value of defendant's property at the time of the execution of the separation agreement, was harmless, where the jury did not consider such statements in arriving at their verdict on the net value of the community property.

20. Appeal and error ⟜1060(1)—Argument of counsel held harmless if error.

Conduct of counsel in referring to defendant's amended answer and reading therefrom an allegation, if improper, was harmless, where it was an issue asserted by the defendant and submitted to the jury, and the jury were authorized to take the same pleadings with them in their deliberations and read them for themselves.

21. Judgment ⟜253(2)—Allowance held improper in absence of claim therefor in pleadings.

In an action by divorced wife to set aside separation agreement and recover her proper portion of the community estate, court erred in allowing her interest on her share of the community property from the time of the execution of the separation agreement, where she did not in her pleadings allege any facts from which it might be inferred that she claimed interest, and prayed for no interest, and where she affirmatively alleged that she was entitled to recover in addition to value of interest in land one-half of the profits, rents, and revenues derived from the lands, and undertook to prove what those rents and revenues were.

Appeal from District Court, San Saba County; J. H. McLean, Judge.

Action by Emma Kuehn against R. W. Kuehn and others. Judgment for plaintiff,

and certain defendants appeal. Reformed and affirmed.

Ocie Speer, of Fort Worth, Jno. W. Estes, of Los Angeles, Cal., and Walters & Baker, of San Saba, for appellant North Texas Trust Co.

Flack & Flack, of Menard, for appellant R. W. Kuehn.

Wilson & Johnson, of San Saba, and Burney Braly, of Fort Worth, for appellee.

BAUGH, J. This is the second time this case has been before this court on appeal. A full statement of· substantially the same facts involved is found in 232 S. W. 918. A writ of error was granted, and the opinion of the Commission of Appeals is reported in volume 242, p. 719, of the Southwestern Reporter.

R. W. and Emma Kuehn were married about 1885 and lived together until 1914, during which time they accumulated most of the property involved in this suit. On July 28, 1915, they made a separation agreement whereby, all their property was conveyed to J. E. Odiorne, as trustee, with the provision that Emma Kuehn be paid $10,000 by the trustee. It also provided that R. W. Kuehn assume all community indebtedness, and .that after payment of the $10,000, the trustee convey all of said property to R. W. Kuehn. Emma Kuehn was granted a divorce on November 17, 1915, and on November 30, 1915, executed a confirmation deed to all said property to R. W. Kuehn, reciting a consideration of $10,000. Only $9,000 was ever paid her. On May 12, 1916, J. E. Odiorne, as trustee, conveyed all of said property to R. W. Kuehn. Kuehn and Odiorne were then partners in the cattle business. In 1916 and 1917 they became heavily involved and finally insolvent. In April, 1917, the appellant, North Texas Trust Company, obtained a judgment against them for $64,000, in Tarrant county, Tex., attached all the lands appearing in the name of R. W. Kuehn, foreclosed its attachment lien, bought in said lands at sheriff's sale, and credited the amount of its bid·on its judgment.

The appellee, plaintiff below, filed suit on December ·23, 1918, against appellants, seeking to annul, cancel, and set aside said separation agreement, and the deed confirming same, and also that of the trustee to R. W. Kuehn, on the ground that the former were procured through fraud, misrepresentation, overreaching, duress, and undue influence. In her prayer for relief she asked:

(1) That said deeds be canceled; that her title in the lands be declared superior to that of the North Texas Trust Company; that the value of her interest in the community property, both real and personal, on said July 28, 1915, be fixed, together with the profits derived from the lands since the North Texas Trust Company took possession of same; that said lands be partitioned and an amount set aside to her equal in value to her community interest at the date of the separation agreement, plus such share of the profits as she was entitled to.

(2) In the alternative plaintiff asked for cancellation of all said instruments so far as her individual half interest in the community real estate was concerned; that her interest in the personal property and profits from said land since the North Texas Trust Company took possession of same be fixed; that she have judgment against Kuehn for such value of the personalty and against the North Texas Trust Company for her share of the profits from the land since it took possession of same; that a partition of said lands be had, and that a lien be fixed and foreclosed against the trust company's interest in same, to secure her interest in the personalty and in the profits arising from the use of the lands.

(3) In the further alternative, that, if both the foregoing be found impracticable, then that the value of her interest in all the community property at the time she executed the separation agreement be fixed; that she have judgment against R. W. Kuehn for such value; that an equitable lien be fixed upon and foreclosed against the lands taken' from R. W. Kuehn by the North Texas Trust Company; and that so much of said lands be ordered sold as were necessary to satisfy such judgment.

Plaintiff admitted in her pleadings receipt from R. W. Kuehn of $9,000, and asked that such amount be credited on her interest in the community property as same existed on the date the separation agreement was executed. The following, taken from appellants' brief, substantially states the issues raised by the North Texas Trust Company, one of the defendants, and appellee's reply thereto:

"The defendant the North Texas Trust Company answered by general denial and further pleaded estoppel as against plaintiff, in that the plaintiff, long prior to the filing of this suit, and after she. had obtained a divorce from her former husband, R. W. Kuehn, conveyed to him by warranty deed the real estate described in her pleadings and permitted the title to said property to stand in his name and permitted him to borrow from the defendant company the sum of $64,000 while said property was standing in his name, and thus permitted him to obtain credit upon the faith of title appearing to be vested in him; the defendant further alleged that it recovered judgment against the defendant R. W. Kuehn and another in the sum of $62,400 and more, and under said judgment sold the lands in controversy, at which sale it became the purchaser without knowledge, actual or constructive, that the plaintiff was claiming any interest in the property; that it loaned to the defendant R. W. Kuehn the money for which such judgment was obtained after the plaintiff had executed a deed by which the title to the property in controversy was conveyed to the defendant R. W. Kuehn, believing said transfer to be legal and

without knowledge or notice of plaintiff's claim to the property in controversy; that the plaintiff was estopped from setting up any claim in the property by reason of her conduct in conveying the same to R. W. Kuehn and permitting him to use, occupy, and control the property as his own. This defendant denied specially that there was any undue influence brought to bear upon the plaintiff by her husband, the defendant R. W. Kuehn; that the defendant R. W. Kuehn never deceived or misled the plaintiff in any way in regard to the property settlement; that the plaintiff, knowing the facts connected with said settlement made such settlement under the advice and counsel of her attorneys.

"This defendant pleaded in reconvention for a judgment in the alternative against plaintiff establishing a sum of money paid out in discharge of a note and lien of $7,500, a charge upon the lands in controversy, paid by it. It furthermore pleaded that the lands in controversy in Williamson county were the sole and separate property of defendant R. W. Kuehn, and the plaintiff had no interest in the same. This defendant prayed the plaintiff take nothing, and in the alternative that it have judgment for the sum and amount of the note and lien which it had paid.

"The defendant R. W. Kuehn adopted the answer of his codefendant, the North Texas Trust Company.

"By a first supplemental petition, the plaintiff denied generally and pleaded specially that she had no knowledge or notice that the defendant R. W. Kuehn was claiming or using the lands in controversy as his own; that the defendant North Texas Trust Company relied upon the personal security and not to any extent upon the apparent ownership of the defendant R. W. Kuehn of the lands in controversy. She pleaded the pendency of cause No. 2060 in the district court of San Saba county, wherein she was plaintiff, involving the lands in controversy as notice of her rights, and likewise pleaded a lis pendens filed for record in San Saba county, on the 28th of July, 1916. The defendant North Texas Trust Company replied by first supplemental answer excepting to the plea of lis pendens and notice, denying generally and denying specially the validity of the alleged lis pendens notice.

"The other defendants answered, but their answers present no question pertinent to this appeal."

The case was submitted to the jury on special issues. These issues and the jury's answers thereto were as follows:

"First: Was the tract of land in Williamson county, first purchased by R. W. Kuehn, and referred to by the evidence as containing 300 acres or more, the separate property of said R. W. Kuehn?" To which the jury answered: "Yes."

"Second: Was the tract of land in Williamson county, last purchased by R. W. Kuehn, and referred to as containing about 600 acres, the separate property of said R. W. Kuehn?" To which the jury answered: "No."

"Third: What was the total net value of the community property of R. W. Kuehn and his wife, Mrs. Emma Kuehn, on the 28th day of July, A. D. 1915, when said separation deed and agreement was executed?" To which the jury answered: "$47,000."

"Fourth: Did the plaintiff, Emma Kuehn, in the settlement of property rights between herself and R. W. Kuehn, receive the equivalent of one-half of the net value of said community property?" To which the jury answered: "No."

"Fifth: Was the defendant North Texas Trust Company induced to extend credit to defendant R. W. Kuehn, which would not otherwise have been extended, by reason of the separation deed and agreement dated July 28, 1915, and the deed from Mrs. Emma Kuehn to R. W. Kuehn, dated November 30, 1915, and the deed from J. E. Odiorne, trustee, to R. W. Kuehn, dated May 12, 1916, or either of them?" To which the jury answered: "No."

"Sixth: In the negotiations leading up to the separation agreement was J. E. Odiorne representing and acting as the agent of the defendant, R. W. Kuehn?" To which the jury answered: "Yes."

"Seventh: In the negotiations leading up to the separation agreement, was said J. E. Odiorne representing and acting as the agent of the plaintiff, Mrs. Emma Kuehn?" To which the jury answered: "No."

"Eighth: In the negotiations leading up to the separation agreement, was J. E. Odiorne acting in a neutral capacity as the mutual friend of both R. W. Kuehn and his wife, Mrs. Emma Kuehn?" To which the jury answered: "No."

"Ninth: Was the plaintiff, Mrs. Emma Kuehn, deceived or misled as to the net value of said community property through false statements or misrepresentations, if any, as to material facts made to her by said J. E. Odiorne, at the time of or prior to the execution of said settlement deed and agreement?" To which the jury answered: "Yes."

"Tenth: In executing her deed dated November 30, 1915, to defendant R. W. Kuehn, did plaintiff, Mrs. Emma Kuehn, do so in reliance upon her own knowledge of the property and affairs of herself and husband?" To which the jury answered: "No."

The following special issues, requested by the appellants, were also submitted:

"First: Did the plaintiff, on November 30, 1915, of her own free will, irrespective of any previous representations or statements, if any, of J. E. Odiorne, concerning R. W. Kuehn's property, execute her deed to defendant R. W. Kuehn for the consideration therein shown?" To which the jury answered: "No."

"Second: In executing her deed of date November 30, 1915, to defendant R. W. Kuehn, conveying the lands in controversy, did the plaintiff do so in reliance upon the advice of attorney, O. B. Wilson?" To which the jury answered: ."No."

Based upon these findings, the court rendered judgment that the plaintiff recover from R. W. Kuehn the sum of $20,880; that a lien be established and foreclosed against all the lands which constituted the community property of R. W. and Emma Kuehn at the time the separation agreement was executed, and that same be sold; that out of the proceeds from the sale of the lands in

San Saba county the North Texas Trust Company be first reimbursed in the sum of $11,276.15, that being the amount it had paid out to satisfy a lien against said lands held by an innocent purchaser; that the plaintiff, Emma Kuehn, then be paid said sum of $20,880, and the balance, if any, be turned over to the North Texas Trust Company. From this judgment the North Texas Trust Company and R. W. Kuehn appeal.

## Opinion.

Appellants assert error of the trial court under thirty propositions of law. There are fifty-six assignments, but many of them have been abandoned. In their first and eighth propositions, appellants insist that the undisputed evidence and that the overwhelming weight and great preponderance of the evidence showed that the defendant North Texas Trust Company was induced to extend credit to R. W. Kuehn, under the belief induced by the acts and conduct of Emma Kuehn, and by virtue of her execution, and the execution by J. E. Odiorne, of the deeds she seeks to cancel and annul, and that by reason thereof she is estopped to recover the property so conveyed. By their propositions 8 to 14, inclusive, appellants also complain that the answers of the jury to special issues Nos. 4, 5, 8, 9, 10 and to defendant's requested special issues Nos. 1 and 2 are not supported by the evidence. On all of these issues the jury found against appellants.

[1] We have carefully read the entire statement of facts, and considered all the testimony offered on each of the issues complained of. Without setting out same or discussing appellants' propositions separately, we are of the opinion that there was sufficient competent evidence to support the answers of the jury to all the special issues above named. On many, if not all, of said issues the evidence was conflicting. The courts have repeatedly held that jury findings, based on conflicting evidence, will not be disturbed on appeal, unless same are so overwhelmingly against the preponderance of the evidence as to clearly show that such verdict is wrong. Ins. Co. v. Jones (Tex. Civ. App.) 197 S. W. 736; Lumber Co. v. Mast (Tex. Civ. App.) 208 S. W. 360; Ry. Co. v. Patterson (Tex. Civ. App.) 230 S. W. 1051; Payne v. Texas Mercantile Co. (Tex. Civ. App.) 248 S. W. 79. This is not true as to any of the answers complained of by appellants.

[2] There was no error in submitting special issue No. 3. Settlements between husband and wife will be upheld only where they are entered into without coercion or undue influence, and the provisions are just and equitable. And where the question of fraud is raised, the burden is upon the husband to show these facts. 21 Cyc. 1293; 27 C. J. 46; Rains v. Wheeler, 76 Tex. 395, 13 S. W. 324; Kuehn v. Kuehn (Tex. Civ.

App.) 232 S. W. 926. It is undisputed that Mrs. Kuehn received only $9,000 for her interest in the community. What the actual value of that community was at that time then became one of the most vital issues in the case in ascertaining whether such settlement was fair and just.

[3-5] Having submitted special issues Nos. 3 and 9, we see no need for submitting special issue No. 4. However, if error, we deem it harmless. Plaintiff was entitled to half of the community property or its equivalent in the settlement. Nor do we think the submission of this issue suggested to the jury that, unless she did get the value of one-half the community at the time, she had been deceived. Appellants' contention that the law imposes no duty on either spouse to purchase the community interest of the other is correct. But having undertaken to do so, whether in person or through an agent, it was incumbent upon the husband to see to it that such purchase from his wife was fair and equitable. And this is especially true in the instant case, where it appears that the wife knew little about the amount or value of the community property, but both the husband and Odiorne, whom the jury found to be his agent in the matter, were fully in possession of such facts.

[6] Nor is the fifth special issue subject to the criticism lodged against it by appellants. It clearly submits to the jury, we think, the question of whether all or any of the conveyances mentioned therein, either wholly or in part, induced the North Texas Trust Company to extend credit to R. W. Kuehn, which it would not have extended to him and Odiorne on the cattle covered by their mortgages anyway.

[7, 8] In paragraph 5 of the preliminary part of his charge, the trial court gave the following charge to the jury:

"All effects which the husband and wife possess at the time their marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be proved, and the burden of proof rests upon the person who asserts the contrary."

Appellants insist that it was error to place this burden on R. W. Kuehn of showing the separate character of the lands claimed by him as his separate property and that Kuehn's general denial to her pleadings placed the burden on Emma Kuehn, before she could recover, to show that the property in question was community. We do not think so. If appellants had pleaded only a general denial, a different question might be presented. But, in addition to this general denial, they pleaded specifically that the Williamson county lands were the separate property of R. W. Kuehn. The jury found that the 300-acre tract was R. W. Kuehn's separate property. The undisputed testimony was that the 600-acre tract was pur-

chased after his marriage to plaintiff. Clearly, therefore, it was incumbent upon him to show that it was his separate property. Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; Wood v. Dean (Tex. Civ. App.) 155 S. W. 365; Gameson v. Gameson (Tex. Civ. App.) 162 S. W. 1169; Emery v. Barfield (Tex. Civ. App.) 183 S. W. 386; Boswell v. Pannell, 107 Tex. 433, 180 S. W. 596. The case of Boswell v. Pannell is cited and relied upon by appellants to support their contention. We think it rather supports the contention of appellee. In that case Pannell sued Boswell and others to set aside a deed on the ground that it was procured by fraud. There were other issues in the case, but it is unnecessary to state them here. Barrow, one of the defendants, in addition to a general denial, pleaded specially that he was an innocent purchaser for a valuable consideration. Judge Yantis, of the Supreme Court, after stating the general rule as to the burden of proof, used the following language:

"It may have been considered, and doubtless is true, that the defendant Barrow had a better chance before the jury with such a charge given, distinctly instructing them that, if Barrow was an innocent purchaser for a valuable consideration, he ought not to lose the land. Be this as it may, Barrow did present this special answer to which that portion of the charge of the court complained of had direct application. He set forth affirmatively this defense. It was therefore incumbent upon the court to charge upon it. In charging it as a defense the court required Barrow to establish it as a defense by a preponderance of the evidence. Certainly no complaint can justly be made of the trial court for charging the defendant's defense, and undoubtedly, when charging it, the duty arose to place the burden of proof as to such a defense upon the defendant who had pleaded it. If this is a greater burden than should have rested upon the defendant Barrow, the reply is that it is the burden which the defendant voluntarily assumed when he refused to rest on the inability of the plaintiff, Pannell, to establish his case, or upon his own ability to defeat it by rebuttal evidence."

This, we think, clearly applies to the case before us, and conclusively disposes of the proposition adversely to appellants.

Appellants' sixth proposition is as follows:

"The court erred in failing to submit to the jury a proper charge imposing upon the plaintiff the burden of proof in the case upon those issues upon which her right to recover depended, especially since these defendants objected to the court's charge as a whole, because same nowhere imposed upon the plaintiff such burden."

The court nowhere placed the burden of proof on the plaintiff on any of the separate issues submitted, or on her right to recover generally.

[9, 10] It is a general rule that the burden of proof rests upon him who asserts the af-

firmative of an issue to establish it by a preponderance of the evidence, and the court should so charge. This, however, is not always true when a case is submitted on special issues, or when the testimony comes from both parties. Blum v. Strong, 71 Tex. 321, 6 S. W. 167; Stooksbury v. Swan, 85 Tex. 566, 22 S. W. 963; Kirby v. Estell, 24 Tex. Civ. App. 106, 58 S. W. 254. In any event it is incumbent upon the party desiring a charge to request it. Texas Baptist Univ. v. Patton (Tex. Civ. App.) 145 S. W. 1067; Goree v. Bank (Tex. Civ. App.) 218 S. W. 625. In the latter case, which is cited by appellants to sustain their proposition, the court uses the following language:

"Such special issues frequently are so framed for a finding as to indicate the burden, or, in other words, the direction to find so specific as to need no instruction as to how to find. However, when the court has not instructed on the burden of proof, the court should, when requested to do so, if necessary for the better aid and guidance of the jury."

[11, 12] It is true that the appellants objected to the court's charge on this ground, but nowhere did they request any instructions on the burden of proof. We think clearly none were needed as to special issues third and fourth. The question of fraud having been raised, the jury having found that the community property at the time of the separation agreement was executed was worth $47,000 net, and it being undisputed that she had been paid only $9,000 for her interest therein, we are of the opinion, as stated by our lamented Chief Justice Key, on the former appeal of this case, that the burden of proof on the other issues was upon the appellants. Appellants were not injured, therefore, by the court's failure to charge on the burden of proof, even if it were error not to do so.

[13] Appellants complain at the refusal of the court to submit to the jury the following requested issue:

"Did the defendant, North Texas Trust Company, levy its attachment, foreclose its lien, and purchase said land at foreclosure sale upon the strength of the apparent title thereto being vested in the defendant R. W. Kuehn under the terms of the separation deed or plaintiff's warranty deed of November 30, 1915?"

Had this issue been proper otherwise, we doubt if the pleadings of the trust company would authorize its submission. But aside from this it was not error to refuse to submit this issue. Appellants cite and rely upon the case of Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S. W. 963, 66 Am. St. Rep. 875, to sustain their contention. The Bicocchi Case was considered by Judge Key on the former appeal of this case and found not to be in point. See 232 S. W. 925. This court will follow his conclusion without further discussion. Roberts v. Armstrong (Tex.

Civ. App.) 212 S. W. 227. Appellants have also filed additional authorities on this point. We have read them all carefully and find that without exception they apply to the registration laws. It is the well-settled law in this state that an execution lien fixed without notice of an unrecorded conveyance previously made will prevail as against such conveyance. Grace v. Wade, 45 Tex. 522; Turner v. Cochran, 94 Tex. 480, 61 S. W. 923. But this is by force of the registration laws. Mrs. Kuehn's interest in these lands, title to which her husband had obtained through fraud, was only an equitable interest in the nature of a trust, which, of course, could not have been recorded. These rules, as laid down in the cases cited by appellant, are therefore inapplicable. McKamey v. Thorp, 61 Tex. 651.

[14] By their fifteenth, sixteenth, and seventeenth propositions appellants complain of the trial court's action in giving plaintiff a money judgment against R. W. Kuehn, and in fixing a lien against the lands to secure it, and ordering same sold to pay such judgment. They insist that the only relief plaintiff was entitled to was to recover her interest in the lands. We cannot agree with this. The evidence clearly shows that R. W. Kuehn was insolvent; that all the community personal property had been disposed of; that most of the San Saba county lands were jointly owned with the Behrenses; that there were outstanding prior liens against some of it; and that she should account for the $9,000 already received. The court manifestly found that it was impracticable to restore to plaintiff her interest in the property and therefore granted her the relief sought in her alternative prayer. This, we think, the court was authorized to do in order to equitably settle the rights of all parties concerned. 39 Cyc. 640; 26 R. C. L. p. 1370.

[15] In their eighteenth, nineteenth, twentieth, twenty-second, and twenty-sixth propositions, appellants complain of the admission, over objection raised at the time, of the testimony of Emma Kuehn and her daughter, Leona, as to drunkenness of R. W. Kuehn from and after their marriage, his cruel treatment of plaintiff, threats against her life, abuse, etc. Appellants also, after the evidence was concluded, moved to strike all such testimony from the record as being irrelevant, highly prejudicial, not supported by pleadings, not tending to prove fraud, and as foreign to any issue in the case.

In addition to pleading fraud, plaintiff fully pleaded overreaching and undue influence by R. W. Kuehn and Odiorne, in taking advantage of her weakened and distressed state of mind, alleged to have been brought about through the long-continued excesses, intemperance, cruelties, threats, etc., of her husband. On these issues the testimony was perhaps admissible. But only the issue of fraud was submitted to the jury. Nor did the plaintiff request the submission of any other issue. Having abandoned her pleas of overreaching and undue influence, the testimony complained of then became irrelevant and immaterial on the issue of fraud, and appellants' motion to strike it from the record should have been granted.

[16] This testimony was of such character as ordinarily would have been prejudicial to the rights of the defendant R. W. Kuehn. A careful investigation of the entire record convinces us, however, that in the instant case this error was harmless, and that no injury was done the appellants by reason of it. Other material issues were involved, it is true, but we conceive the outstanding and vital issue in the case to be whether or not R. W. Kuehn, in the separation agreement, made such fair and equitable settlement with his wife of their community property as should be upheld by the courts. It is not disputed that she received in this settlement but $9,000 for her interest. The important question then became, What was the fair value of the community property at the time she was induced to make this settlement? Odiorne, who was the partner of Kuehn and thoroughly familiar with all his business, his debts, and his property, testified (and it is nowhere contradicted) that the community personal property would, at the time the separation agreement was made, pay all the community debts of R. W. and Emma Kuehn. The net value of this estate was then the fair value of the community realty at the time the separation agreement was executed. We have carefully examined the testimony on this point, and it discloses the following: According to Odiorne's testimony the lands which the jury found were community property were worth from $50,000 to $50,500. According to R. W. Kuehn's own testimony these lands, not including the home place in San Saba county, were worth from $38,600 to $40,100. He did not testify as to the value of the home place, containing 137 acres of land, about half of which was in cultivation, but did testify that the house on it alone had cost him $4,000 or more. Odiorne testified that this home place was worth from $5,000 to $5,500, and G. H. and H. F. Behrens, who sold this property to R. W. Kuehn, testified that it was worth from $8,000 to $8,500. According to the testimony of G. H. and H. F. Behrens, who were familiar with the values of all the lands, and were joint owners with R. W. Kuehn of the 4,000 acres in San Saba county at the time, the lands in question were worth from $50,000 to $55,000. The jury found that the net value of the community property at that time was $47,000. It is conclusive, therefore, we think, that this improper testimony did not in any way influence the jury in arriving at their verdict on the vital issue in the case. The fact that

the plaintiff had been induced by her husband, acting through his agent Odiorne, while she was undisputedly in a distressed state of mind, to part with her interest in the community property for an agreed consideration of $10,000, $1,000 of which was never paid, when Kuehn knew that such interest was worth more than twice that amount, certainly placed the burden upon him to show that he had not in any way misled or deceived her, if it does not in fact raise a strong presumption of fraud because of the relation of the parties. We think he failed to discharge this burden, and that his rights were in no way injured by the testimony complained of.

[17] The twenty-first, twenty-third, and twenty-fifth propositions of appellants attack the admissibility of testimony of Mrs. Kuehn and her daughter, Leona, as to statements and representations made to Mrs. Kuehn at Temple, by J. E. Odiorne, of the value of the community property. These statements were made in an effort to induce Mrs. Kuehn to settle their property rights out of court and leave only the issue of a divorce for the court to decide. The jury found, and we think properly so, that Odiorne was the agent of R. W. Kuehn in the transaction. He was a partner of Kuehn and familiar with all his property and its value. The testimony was admissible.

[18] Plaintiff introduced in evidence financial statements made by R. W. Kuehn and J. E. Odiorne to the North Texas Trust Company under date of April 10, 1916, showing that Kuehn's net assets above liabilities were $87,200; and that Odiorne's were $77,175. These statements were signed, respectively, by Kuehn and Odiorne, and were made for purposes of obtaining cattle loans. They appear to have been introduced by appellants at a former trial of this case. At the close of the evidence appellants requested that the jury be instructed that such instruments constituted no evidence of the truth of the aggregate or other value of the properties or assets owned by R. W. Kuehn or J. E. Odiorne at the time of the execution of the separation deed involved in this suit.

[19] This instruction should have been given. We are of the opinion, however, that failure to give it was harmless error. This statement of Kuehn was made less than six months after Odiorne had procured for him from Mrs. Kuehn her confirmation deed of November 30, 1915, upon the assurance that the net value of the community was only $20,000. A careful reading of all the evidence has convinced us that the jury did not consider this letter of Kuehn's in arriving at their verdict on the net value of the community property. Their finding on this issue is in keeping with and was manifestly based upon the testimony of R. W. Kuehn, J. E. Odiorne, H. F. Behrens, and G. H. Behrens

already referred to above. The jury found that the value of the community property only a few months before the date of this letter of credit was but little more than half what such letter showed it to be. It is obvious, therefore, that they ignored this letter in arriving at their verdict on this issue.

Their twenty-eighth proposition is addressed to remarks of plaintiff's counsel in his argument to the jury. We think, however, that the remark was authorized by the evidence and was not error.

[20] The same counsel, in his argument on the issue as to whether plaintiff was deceived in parting with her interest in the community property for $10,000 referred to defendants' amended answer and read therefrom the following allegation:

"That she knew at the time she and her husband deeded their property, as well as the separate property belonging to said R. W. Kuehn to J. E. Odiorne for the purpose of being retransferred by him, the said J. E. Odiorne, to R. W. Kuehn, that the amount which she was to receive, to wit, $10,000, was less than one-half the community property value at that time."

This answer was not introduced as evidence, but was one of the defenses urged and relied upon by the defendant North Texas Trust Company. This may have been improper conduct of counsel, but, inasmuch as it was an issue asserted by the defendant, and submitted to the jury, and the jury was authorized to take these same pleadings with them in their deliberations and read them for themselves, even if error, we think it was harmless. The case of Hynes v. Packard, 45 S. W. 562, cited by appellants, is not in point. In that case the pleadings in question had been stricken out upon exception, and were not, of course, properly before the jury for any purpose.

[21] Appellants, in their thirtieth proposition, assert fundamental error of the court in allowing interest at 6 per cent. from July 28, 1915, on the value on that date of plaintiff's half interest in the community property. The jury found the net value of the community on that date to be $47,000. Plaintiff's interest was then of the value of $23,500. She admits having received $9,000, leaving a balance due her of $14,500. Manifestly the court, in rendering judgment for $20,880, included therein interest at 6 per cent. on the $14,500, from July 28, 1915. We think this was error. Nowhere in her pleadings did plaintiff allege that she was entitled to such interest, nor did she anywhere in her prayer ask that such interest be awarded either eo nomine or as damages. The only relief asked on this score is in her second alternative prayer as follows:

"Then as a further alternative plaintiff prays that she have judgment for the value of all her certain undivided right, title, and interest

in and to said community property, both real and personal, as it existed on the date of the execution of said separation agreement, as hereinabove alleged, against the defendant R. W. Kuehn," etc.

Nowhere in her pleadings does plaintiff allege any facts from which it might be inferred that she claimed interest. On the other hand she alleged that she was entitled to recover in addition to the value of her interest in the lands, one-half the profits, rents, and revenues derived from these lands, and undertook to prove what those rents and revenues were. This, we think, clearly shows that she was not seeking to recover interest, and it was error for the trial court to include in the judgment the interest complained of. Ablowich v. Bank, 95 Tex. 429, 67 S. W. 79, 881; Ry. Co. v. Addision, 96 Tex. 61, 70 S. W. 200; Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317; San Antonio v. Pfeifer (Tex. Civ. App.) 216 S. W. 207; West Lumber Co. v. Henderson et al. (Tex. Com. App.) 252 S. W. 1045, and cases therein cited. In this last-named case, Judge Powell of the Commission of Appeals, in a very able opinion, reviews numerous authorities and clearly lays down the rule which conclusively settles this point. This court has also recently decided this issue in the cases of James C. Davis, Agent, v. J. P. Morris, 257 S. W. 328, and Atkinson et al. v. Jackson Brothers, 259 S. W. 280, not yet [officially] reported.

The judgment of the trial court is therefore reformed so as to reduce the amount of the recovery against R. W. Kuehn from $20,880 to $14,500, with interest on said $14,500 from November 27, 1922, at the rate of 6 per cent. per annum. In all other respects the judgment is affirmed.

Reformed and affirmed.